L. J. COOPER, *Appellant,* v. J. ROTHMAN AND HIS WIFE, PEPE ROTHMAN AND SAMUEL BORCHARDT AND HIS WIFE, TILLIE BORCHARDT, *Appellees.*

1. Where C. loaned to R. and four others, $5,000.00, at 8% interest evidenced by a note for that amount due ninety days after the date of said note (*viz.* on the 1st of July, 1907), secured by a mortgage on real estate, which money was borrowed from C. for the purpose of going into a real estate speculation, and it was agreed at the time of said loan that C. in addition to the 8% interest should have one-third interest in the profits, and where it appears that on the 1st of October, 1907, when said note fell due that R. and his associates were unable to pay the note, and as a consideration for a ninety day extension they gave C. three notes aggregating $1,500.00, payable in six, nine and twelve months, and it was agreed that these three notes were to satisfy C.'s claim for profits, when at that time there were no profits, the transaction is usurious under the statute of Florida.

2. Where there is a note for $5,000.00 bearing eight per cent. interest, and three $500.00 notes which represent a usurious consideration, all involved in the same foreclosure proceedings, there is no error committed by the Circuit Judge in applying payments which were made on the $5,000.00 note, and in refusing to allow interest on the principal debt of $5,000.00.

Appealed from the Circuit Court for Hillsborough County.

The facts in the case are stated in the opinion of the court.

*J. W. Frazier, J. C. Reynolds, Parkhill & Jackson,* and *J. T. G. Crawford,* for Appellant;

*F. M. Simonton,* for Appellees.

HOCKER, J.—On the 14th day of February, 1910, appellant filed two bills in the Circuit Court of Hillsborough County to foreclose two mortgages on real estate executed by appellees to him. One to foreclose a mortgage dated October 1st, 1907, to secure the payment of three notes for $500.00, each dated the same day of the mortgage and due respectively six, nine and twelve months after date. The second bill, which was an amended one, to foreclose a mortgage on real estate given to secure the payment of a promissory note for $5,000.00, due ninety days after date. The note and mortgage are dated the first day of July, 1907. The two suits were consolidated by consent and were heard and disposed of by one decree.

The answer to the bills set up in substance the defendants in the suits borrowed $5,000.00 from the complainant on July 1st, 1907, for the purpose of buying on speculation a certain tract of land, and that it was agreed that if appellant would lend them $5,000.00 to make a cash payment on the land they would give him 8% interest on the $5,000.00 and one-third of the profits they expected to make from the speculation, and that he would extend the time of payment of the $5,000.00 note in furtherance of the speculation. That when the $5,000.00 note matured, appellees were not able to pay it, and appellant exacted of them as a condition of extension of the time of payment, that his expected profits should be fixed at $1,500.00, evidenced by the three notes referred to. That this was the sole consideration of the said three notes and the mortgage given to secure it, and that the whole transaction was thereby rendered usurious. Replications were filed or waived by consent and the cases were referred to a master to take the testimony. Upon the hearing the Circuit Judge decreed that the transaction was usurious under our statute; that the three five hun-

dred dollar notes and the mortgage to secure the same were void, and that complainant recover only the principal of the $5,000.00, less the payments which had been made to complainant, and attorneys' fees. Complainant appealed from this decree and by assignments of error questions this decree.

It is clear from the testimony that a short time previous to the 1st day of July, 1907, that J. Rothman, Samuel Borchardt, D. M. Woodward and C. C. Woodward had undertaken to buy for speculative purposes from A. P. Stucky, a tract of land containing a little over two hundred acres, situated in Hillsborough County, Florida. The price demanded was $15,000.00, to be paid in installments. The first payment was to be $5,000.00. C. C. Woodward, representing himself, and his associates approached the appellant for a $5,000.00 loan to make the cash payment.

There was a boom in real estate at the time, and C. C. Woodward and his associates were confident they could dispose of the land if they could secure it in a very short time at a large profit. The whole scheme was laid before appellant, and a loan of $5,000.00 was solicited of him. Appellant agreed to lend them the $5,000.00 at 8% interest, and, in addition, he was to receive one-third of the profits of the venture. The money was loaned and the note for $5,000.00, dated July 1st, 1907, due ninety days from date with 8% interest and the mortgage which is sought to be foreclosed were executed and delivered. When the ninety-day note fell due, the rosy expectations of the speculators had not been realized on the land they had contracted to buy from Stucky, paying him the $5,000.00 borrowed from appellant. The latter insisted on the payment of the note. The makers were unable to pay.

In this situation the following agreement was made between the parties:

"THIS AGREEMENT made and entered into on this the first day of July, A. D. 1907, by and between J. Rothman, D. M. Woodward, C. C. Woodward and Samuel Borchardt, parties of the first part, and L. J. Cooper, party of the second part, witnesseth that,

Whereas the parties of the first part have obtained from one A. P. Stuckey a contract of sale to the hereinafter described real estate whereby the said parties of the first part are to pay for said real estate the sum of fifteen thousand dollars ($15,000.00), five thousand dollars ($5,000.00) of which has been paid, and

Whereas the party of the second part advanced to the parties of the first part the said sum of five thousand dollars ($5,000.00), to be repaid in ninety days from the date hereof with interest at the rate of eight per cent (8%) per annum, and whereas the said L. J. Cooper was to have an undivided one-third interest in all profits accruing to the parties hereto from the purchase and sale of the said hereinafter described real estate, and whereas it is agreed between the parties hereto that said L. J. Cooper's profits shall be estimated at fifteen hundred dollars ($1,500.00) the parties of the first part agreeing to give the said L. J. Cooper their three promissory notes dated the first day of October, 1907, for five hundred dollars ($500.00) each, said notes to be payable, six, nine and twelve months respectively from the date thereof and to bear no interest and,

Whereas the said L. J. Cooper agrees in consideration of the payment of the said fifteen hundred dollars ($1,-500.00) to release all his interest in and to the profits arising from the purchase and sale of the hereinafter de-

scribed real estate; in order to further secure the payment of the said five thousand dollars ($5,000.00) advanced by the said L. J. Cooper and the fifteen hundred dollars ($1,500.00) as liquidated profits, the parties of the first part hereby assign and set over unto the party of the second part, the said L. J. Cooper, his heirs and assigns all the right, title and interest in and to the said agreement or contract of sale made and entered into on the 29th day of June, A. D. 1907, between A. P. Stuckey, party of the first part, and the parties of the first part hereto, as parties of the second part, it being understood that the party of the second part hereto is not to assign or transfer said contract unless it becomes necessary to assign or transfer the same in default of payment by the parties of the first part of the sums hereinbefore mentioned together with the interest thereon.

It is further agreed that any extension of the time of payment of any of the said obligations shall be within the discretion of the party of the second part.

It is further understood and agreed that the party of the second part upon the full payment of the said five thousand dollars ($5,000.00) and fifteen hundred dollars ($1,500.00), together with interest on said five thousand dollars ($5,000.00) shall re-assign to the parties of the first part the contract hereby assigned and return to said parties of the first part any other collateral held by the party of the second part to secure the payment of the said sums hereinbefore mentioned and interest thereon, said lands being situate in the County of Hillsborough and State of Florida and more particularly described as follows: Lot three (3) of Hunt's subdivision of the northest quarter of the northeast quarter of section fifteen (15) township twenty-nine (29) south, range nineteen (19) east,

containing twelve and 18.100 acres more or less, according to plat recorded in plat book one (1) on page ninety-three (93) of the Public Records of said county; the east half of the southwest quarter of the southeast quarter of section ten (10), township twenty-nine (29) south, range nineteen (19) east; the west half of the southwest quarter of the southeast quarter of section ten (10), township twenty-nine (29), south of range (19) east, S.½ of N.E.¼ and N.½ of S.E.¼, Sec. (10), Township twenty-nine (29) south, Range fifteen (15) east.

IN WITNESS WHEREOF THE parties hereto have subscribed their names and affixed their seals the date aforesaid.

|                    |          |
|--------------------|----------|
| J. Rothman,        | (Seal)   |
| D. M. Woodward,    | Seal.    |
| Samuel Borchardt   | Seal.    |
| C. C. Woodward,    | Seal.    |
|                    | Seal."   |

This agreement bears date 1st July, 1907, but it is clear from the evidence and from the wording of the instrument itself it was not in fact executed until 1st of October, 1907, when the 90-day note fell due. No profits had been made at that time. It is asserted by the appellees in their testimony that this agreement and the three $500.00 notes with the mortgage to secure the name were all made in order to secure from appellant an extension of time on the 90-day note, and that this was the sole consideration for the same. It is testified by C. C. Woodward, who was the principal negotiator for the loan, that when the $5,000.00 was loaned it was agreed with appellee that he was to get 8% interest, and one-third interest in the profits of the speculation, which was to be not less than $1,500.00, the amount stated in the

written agreement to which we have referred. Appellant admits he was to get one-third of the profits, and does not specifically deny C. C. Woodward's statement that it was agreed when the loan was made his one-third interest in the profits should not be less than $1,500.00. C. C. Woodward's statement is supported by the terms of the written agreement, which fixes appellant's alleged profits, for there was then no profits, at $1,500.00, the total amount of the three $500.00 notes. Appellant's explanation of the circumstances under which the three $500.00 notes were given does not impair the force of C. C. Woodward's statement. Appellant says that when his $5,000.00 note fell due he demanded payment. Appellee wanted an extension, and that they themselves fixed the amount of his profits at $1,500.00, gave notes and a mortgage for the same, and thereby got a short extension of time on the $5,000.00 notes. Granting that appellees fixed the profits of appellant at $1,500.00, when there were in fact no profits, in order to get an extension on the principal debt, this is entirely consistent with the statement of C. C. Woodward that appellant was entitled under the original agreement to at least that much. They would scarcely have ventured to fix a smaller sum when they were endeavoring to get an extension on $5,000.00 loan. Moreover the fact that the agreement copied herein was not executed until October 1st, 1907, but dated back to July 1st, 1907, shows an effort to make it appear that this agreement was in fact a part of the original transaction. This agreement was drawn by the attorney for appellant, who also dated the notes and mortgages.

With reference to the execution of the three $500.00 notes and the mortgage to secure the same, appellant testifies at considerable length. In response to questions by his own solicitor he stated that when he made the

$5,000.00 loan there was no specific agreement that he. would extend the time of payment after its maturity. That extensions were to be at his option; that when the original ($5,000.00) mortgage fell due, he did extend it ninety days. His exact language is as follows: "At the expiration of the original mortgage they asked me for an extension and I granted ninety days beyond the time specified in the original note for five thousand dollars. Q. And at that time the mortgage and the interest up to that time was due, was it? A. Yes it was due. Q. Now, was that the time at which your interest in the profits was determined at fifteen hundred dollars? A. It was. Q. And they simply gave you notes for fifteen hundred dollars and a second mortgage in consideration what, of your extending the note and mortgage? A. Yes, in consideration of my extending the paper for ninety days longer. Q. And in carrying out their original agreement referred to? Yes, I suppose so."

The contention is made here by appellant in argument that the transaction between appellant and appellees was a partnership one, and the usury laws do not apply to it. This contention finds no support in the evidence of the appellant. In answer to the question, "Wasn't it understood between you all that this property was to be subdivided before it was sold? A. It wasn't understood between me at all. I had nothing to do with it. That was nothing to me. They made the plans and were handling the proposition, and I had absolutely nothing to do with it." Again he says: "Q. Mr. Cooper, did you know what these folks were going to do with the land, or of whom they were buying it from, or anything about it other than what they told you? A. Absolutely nothing, only in a general way from their conversation. Mr. Woodward came to me and made application for the loan; and being

a personal friend of mine, and I being friendly to all the
parties interested in this deal, I granted it, and of course
this other matter of any interest to me in the profits came
up incidentally." Again he says: "Q. As to whether
they were to sell this out at a profit or sell it at all or
not, did you have anything at all to do with that or not,
except the loan of that money? A. Not at all." There
is no where in Mr. Cooper's testimony any intimation of
a partnership between himself and the appellees in this
land venture. He did loan the $5,000.00, which was the
first cash payment made by appellees, but he took no risk
of its return with interest, and had no control or man-
agement of the venture. The authorities cited by appel-
lant on this point do not apply to the facts of this case.
The case of Orvis v. Curtiss, 33 N. Y. Supp 589, cited by
appellant in this connection seems to be an authority
against his contention. For it is stated in the second
head-note that an agreement whereby one party is to fur-
nish the capital necessary to carry on the business is to
share equally in the profits and in case of loss is guar-
anteed the return of his investment, and a sum in excess
of the legal rate of interest is usurious." Says the court
in the opinion: "The plaintiff took none of the risks of
a partner, as distinguished from those of a lender of
money. He stood in no danger of losing the capital he
furnished, because he was to recover that back in any
event. He did not even stand in any danger of losing
the use of his money, because he was to recover at least
$5,000.00, profits in excess of 6 per cent interest, however
disastrously the venture might result. He was not ex-
posed to any liability as a partner for the acts of his co-
partner, because the transaction was such that the co-part-
ner could obtain no ostensible authority, and the agree-
ment was such that he had no authority in fact to bind

the plaintiff." This case seems to have been reversed by the following one on the facts:

The case of Orvis v. Curtiss, 157 N. Y. 657, 52 N. E. Rep. 690, is also relied on by the appellant. We have examined it carefully, but the facts in that case were unlike those in the case at bar. This is indicated in the 2nd head-note, which is as follows: "An agreement between two parties which *imports the formation* of a partnership, such as a joint venture in the purchase and sale of stocks is not converted from a contract in the nature of partnership, into a loan of money by the fact that one party guarantees the other against loss on the capital advanced by him, and that his profits shall amount to a certain sum; and the defense of usury is not applicable thereto." It is sufficient to say in regard to the applicability of this case to the case at bar, that in the latter there is not the slightest proof "there was a joint venture in the purchase and sale of the lands by the respective parties. The appellant postively states he had nothing to do with the lands contracted for by appellees. We have examined the other cases cited and find no one of them applicable to the case at bar. The only reference to a partnership in the testimony is contained in the cross-examination of D. M. Woodward. It is as follows: Q. When you borrowed the five thousand dollars, as a matter of fact you took Mr. Cooper into the partnership with you and your associates, didn't you in the profits of this venture? A. In the profits, yes to the extent of fifteen hundred dollars, you might put it that way. Q. You took Mr. Cooper into partnership with you in the profits. A. To the extent of fifteen hundred dollars. Q. Well he was to be a partner in the profits? A. To the extent of not less than fifteen hundred dollars, if you want to call it partnership; that's all." But the witness did

not conduct the negotiations with Mr. Cooper, but these were conducted by his brother, C. C. Woodward, and neither one of them states any facts which indicate a partnership. These statements of D. M. Woodward seem to be nothing more than a complacent acquiescence in the suggestions of his questioner containing no facts which would warrant the conclusion that a partnership existed.

The contention is also made by appellant that he received the three five hundred dollar notes and the mortgage to secure it as a bonus or gift from appellees. This contention is not sustained by the testimony of Mr. Cooper, who says they were given in pursuance of the original agreement to give him one-third of the profits, and also as a consideration for the 90-day extension of the $5,000.00 note.

It is unnecessary to burden this opinion with an examination of the numerous authorities cited in the briefs on the question of what constitutes usury. Our statute on the subject in force when these contracts were made is section 3105, General Statutes of 1906 (substantially re-enacted by Section 2, Chapter 5960, Laws of 1909, the provisos in neither having any relation to the matter in hand) and is as follows:

"3105. Rate higher than ten per cent. unlawful.—It shall not be lawful for any person, company or corporation, to reserve, charge or take for any loan or advance of money, or forbearance to enforce the collection of any sum of money, a rate of interest greater than ten per cent. per annum, either directly or indirectly, by way of commissions for advances, discount, exchange, or by any contract, contrivance or device whatever, whereby the debtor is required or obliged to pay a greater sum than the actual principal sum received, together with interest at the rate of ten per centum per annum as afore-

said." See Bettis v. Tampa Real Estate Ex. and L. Asso., 62 Fla. 435, 56 So. 499.

We think that there was ample evidence before the Chancellor to justify him in holding that this transaction was usurious under the statute, either on the ground that usurious interest was originally contracted for, or on the ground that usurious interest was provided for in consideration of forbearance for ninety days to collect after its maurity the principal debt.

The decree is attacked on the further ground that the Circuit Judge erred in placing the credits on the original principal sum of $5,000.00, and in not placing them on the three $500.00 notes, where it seems Mr. Cooper placed them, or desired them to be placed. We do not think the Circuit Judge erred in placing the credits on the principal debt, and the following authorities sustain his action. Fowler v. Equitable Trust Co., 141 U .S. 384, 12 Sup. Ct. Rep. 1; Crane Adm'r v. Goodwin, 77 Ga. 362; Payne v. Newcomb, 100 Ill., 611; Burrows v. Cook, 17 Iowa 436.

The decree appealed from is affirmed.

WHITFIELD, C. J., and TAYLOR, SHACKLEFORD and COCKRELL, J. J., concur.