92 So.2d 515 (1957)
Berlin GRIFFIN, Appellant,
v.
Emmett J. KELLY, Appellee.
Supreme Court of Florida, Special Division A.
February 6, 1957.
Warwick, Paul & Warwick, West Palm Beach, for appellant.
Farish & Farish, West Palm Beach, for appellee.
HOBSON, Justice.
This is an appeal by defendant from a judgment entered on the pleadings requiring defendant to pay principal and interest upon a certain promissory note, together with attorney fees and costs.
*516 Plaintiff sued upon this note and defendant, in his answer, admitted the execution of the instrument, and that payments thereunder were not current, but alleged affirmative material which may be resolved into two affirmative defenses. Both of these defenses were based upon an agreement allegedly entered by the defendant Griffin, as party of the first part, one Murphy, as party of the second part, and plaintiff Kelly, as party of the third part. This agreement, which was attached to the answer as Defendant's Exhibit 1, read in part as follows:
"Whereas, the party of the first part has arranged to purchase from the parties immediately hereinafter named, a total of 1780 shares of no-par value stock, 1780 shares of 8% cumulative preferred stock of $100.00 par value, and 7500 shares common stock known as promotion stock, all issued by Havana Greyhound Kennel Club, S.A., a Corporation existing and functioning under the laws of Cuba, the respective amounts and kind of stock being set forth opposite their respective names:

 No-Par Preferred Promotion
Name Common
William L. Hundley 1630 1630 7500
Mrs. Helen Paige 100 100 ....
Mrs. Isabel Alderson 50 50 ....

"And Whereas, the cash required for the purchase of said stock, in the sum of $178,000.00 is being loaned to first party by second and third parties in equal proportions, viz. $89,000.00 each, so as to enable first party to make said purchase;

* * * * * *
"Now, Then, for and in consideration of the mutual benefits derived, and to be derived by all of the parties hereto, It Is Mutually Agreed By And Between The Parties Hereto As Follows:
"1. First party has this day executed and delivered to each of second and third parties, his promissory note in the principal sum of $89,000.00 payable on or before three years from date, with William J. Sinot acting as co-signer thereof. In conjunction therewith the makers of said notes agree, as soon as possible thereafter, to execute appropriate papers pledging all of the stock above referred to, with the exception of 490 shares of no-par common, together with all of the earnings and profits incident thereto, as additional security for the payment of said notes. The said stock and pledge agreement shall be escrowed with ____, as escrow agent for all of the parties hereto, until the loan hereinabove referred to has been re-paid in full.

* * * * * *
"3. At the expiration of three years from this date, or sooner in the event that the loans, as aforesaid, are repaid to second and third parties in the manner as aforerelated, each of second and third parties shall, at that time, and in consideration of the granting of said loans to first party, have the option to purchase from first party not to exceed 430 shares of no-par common, 593 shares of 8% preferred, and 2500 shares of common stock, referred to herein as promotion stock, issued by Havana Greyhound Kennel Club, S.A., as escrowed and pledged with the ____, on the basis of ten cents per share."
In the first affirmative defense it was alleged that plaintiff and defendant had been engaged in a joint adventure; in the second defense, it was alleged that the transaction was tainted with usury. Implicit in the judgment of the court is a finding that neither of these defenses was sufficient as a matter of law, and it is in this ruling that error is claimed. As appellee points out, the two defenses, as framed, are inconsistent, but this is no valid objection under the Rules. In 30 F.S.A. Rule 1.8(g), Florida Rules of Civil Procedure it is provided that a party "may also state as many separate claims or defenses as he has, regardless of consistency * * *."
Appellant's primary contention appears to be that it was improper for the court to *517 disregard the defense of usury, and because of the view we take of the case this is the only issue presently to be resolved. The paragraph of the answer which was in effect stricken by the court reads as follows:
"The Defendant says the truth is, that on or before the 28th of July, 1952, the Plaintiff loaned to the Defendant the sum of $89,000.00 for the purpose of purchasing said stock of Havana Greyhound Kennel Club, S.A., a corporation. That there were three classes of stock of said corporation purchased but only the preferred stock had any actual value and that consisted of 1780 shares at $100.00 per share. That Plaintiff charged the Defendant the sum of $59,240.70 as a bonus for making such a loan, in addition to interest at 6% per annum on the amount of the principal actually loaned, and exacted of the Defendant and required the Defendant to execute and deliver the Promissory Note referred to in Paragraph one of said complaint to evidence such transaction and loan.
"That as may be seen from Defendants Exhibit one, the Plaintiff secured an option from Defendant to purchase 593 shares of said preferred stock, having a value of $100.00 per share, and being purchased by Plaintiff on a basis of $100.00 per share and aggregating a value of $59,300.00 at an option price of ten cents a share, or $59.30. That plaintiff insisted and exacted said option as a condition to making said loan to the Defendant and that said transaction was, and is, tainted with usury and Plaintiff's claim, demand and cause of action asserted and stated in Plaintiff's complaint, is usurious and contrary to, and in violation of Section 687.07, Florida Statutes 1951 [F.S.A.]. That Plaintiff lawfully and knowingly, in direct connection with said transaction that resulted in the execution and delivery of said Promissory Note, Plaintiff's Exhibit A and said contract, Defendants Exhibit One, charged the Defendant interest in excess of the legal rate and Defendant says that, because of said usury in said transactions, the whole of the principal and interest of said note, which Plaintiff seeks to recover in this action is forfeit in the whole sum and this Defendant is not indebted to the Plaintiff in any sum whatsoever for principal, interest, costs or attorneys fees."
The note executed by appellant Griffin provided for payment on or before three years from date. The same day the note and agreement were executed, Griffin wrote a letter to Kelly, which was attached to complaint as Plaintiff's Exhibit "B", and read in part as follows:
"Being cognizant of your possible requirements for a return of the amount loaned prior to said three year period, I hereby agree to implement, if necessary, periodic payments made on said note from time to time, so that a minimum of 50% of said note will be paid within one year from date of said note, and the balance thereof within one year thereafter.
"This letter shall be in supplementation of the Agreement executed today, as a part thereof, and in consideration thereof. The commitment made herein, by me, shall not be considered to be in derogation of Paragraph 3 of said Agreement, but shall be read in conjunction therewith."
The trial court was thus presented with a situation wherein it had been alleged that the defendant, by agreement, was obligated to repay the sum of $89,000 in any event within three years, or "if necessary" according to the letter of July 28, 1953, within two years and at least half of the principal sum within one year. Interest in the amount of 6% per annum was to be exacted, and in addition thereto the lender would have an option to purchase $59,300 worth of stock for the sum of $59.30. The lender thus had it within his power to make, in addition to interest on the principal sum at 6% per annum, the sum of $59,240.70 for the borrower's use *518 of $89,000 for two years. Judging from the pleadings, as we must, it does not appear that this arrangement could be considered a joint adventure except in the broad, non-legal sense in which any agreement for a loan can be considered a joint enterprise. Appellant contends, and we agree, that appellee's loan was not invested as risk capital. See Cooper v. Rothman, 63 Fla. 394, 57 So. 985, and 91 C.J.S., Usury, § 26.
Appellee relies upon a line of cases commencing with Orvis v. Curtiss, 157 N.Y. 657, 52 N.E. 690, which we cited and distinguished in the Rothman case, supra. In the Orvis case the parties jointly agreed to buy stock and opened a joint account for the purpose. Plaintiff agreed to furnish the money and was to share equally in the profits with the defendant, who was a stock broker. Defendant guaranteed that plaintiff would not lose by this transaction, but no note was executed to which the agreement was collateral. The note ultimately sued upon was given by the defendant to the plaintiff to compromise a claim against the defendant which had grown out of the original transaction. It was held, under the facts of the case, as they were presented to the Court of Appeals of New York, that defendant's purpose never had been to borrow money, but to deal in stocks. In other words, there had been no original loan of money, but an advancement into a joint account from which both intended to profit. It was held that the original agreement was not usurious on the basis of the showing made as to the intention of the parties.
In Crowson v. Cody, 209 Ala. 674, 96 So. 875, the court considered a situation somewhat similar to that in the Orvis case, upon which the court relied. Here, too, the note in suit was given in settlement of a balance due as a result of an allegedly usurious transaction. The court was also confronted with problems of pleading, and it was held, on the basis of the record before the court, that the transaction alleged was prima facie non-usurious.
Perhaps the most helpful case we have found is that of Carter v. Hook, 116 Va. 812, 83 S.E. 386. In that case, after reviewing the authorities, the Supreme Court of Virginia stated:
"The principle of the cases just cited is precisely applicable to the one under consideration. In those cases the loan was made on condition that the borrower should purchase stock owned by the lender at a price much above the market value, while in the case before us the loan was made upon condition that the borrower should sell a farm to the lender at about 40 per cent. of its actual value. If such a contract were sanctioned by this court, it would ingraft a dangerous principle upon the law of usury. It would enable the lender to say: `You have a horse, a jewel or a farm, which I crave, and in return for this loan you must pay me 6 per cent. interest, as allowed by law, and give me an option upon that which I covet.'"
We may also quote with approval the Restatement of Contracts, Sec. 529, which reads as follows:
"Where the intent of a party to a bargain is to make a loan of money or an extension of the maturity of a pecuniary debt for a greater profit than is allowed by law, the agreement is illegal though the transaction is put in whole or in part in the form of a sale, a contract to sell or other contract."
Upon the record before us we consider that it was error to hold that the defense of usury was insufficient as a matter of law. But in order for the defense of usury to prevail in this case, the circumstances surrounding the entire agreement must be proved and carefully scrutinized by the court. After describing certain common forms of sales, leases and option contracts, Professor Corbin, in his useful work on contracts, makes the following statement:

*519 "The only difference between a lawful transaction of the sort just described and one that is usurious and unlawful is found in the intentions and purposes of the parties; it is the difference between `good faith' and `bad faith.' The parties are themselves permitted to testify as to their purposes and intentions." 6 Corbin on Contracts, Sec. 1501, p. 946.
As to the character of the intention which must be proved, we expressed ourselves recently in Shorr v. Skafte, Fla., 90 So.2d 604, and we have nothing presently to add to the principles to be found in that case.
It follows that the judgment appealed from must be, and it is hereby, reversed and the cause remanded for further proceedings not inconsistent with this opinion.
It is so ordered.
TERRELL, C.J., and DREW and THORNAL, JJ., concur.