129 So.2d 170 (1961)
William H. KAY and W & E Kay Realty Company, an Ohio Corporation, Appellants,
v.
Thomas M. AMENDOLA, Appellee.
No. 1667.
District Court of Appeal of Florida. Second District.
March 24, 1961.
Rehearing Denied May 12, 1961.
*171 Hall, Hartwell & Douglass, Tallahassee, for appellants.
J.B. Patterson, Fort Lauderdale, for appellee.
GERALD, LYNN, Associate Judge.
Plaintiff-appellee filed a bill in equity in the Circuit Court of Broward County charging defendants-appellants with the exaction of criminally usurious interest in connection with a certain loan cloaked in the guise of a real estate option contract.
The Answer denied the charge, and as a result of a trial, a decree was entered in favor of plaintiff ordering the forfeiture of the entire principal and interest paid. The case is before this Court on appeal from the Final Decree.
From the record it can be deduced that the facts giving rise to this cause grew out of a divorce proceeding between plaintiff, Thomas Amendola, and his wife, Nina, during the summer of 1955, which proceeding was hotly and bitterly contested.
Plaintiff and his wife were the owners of a home in Fort Lauderdale as tenants by the entireties valued at $125,000, and which contained furnishings valued at over $10,000. Amendola, not wishing the home to be lost pursuant to what he suspected would be the decree of the Chancellor in the divorce case, devised the plan of allowing a relatively small mortgage on the property to go into default and have the house bid in at the foreclosure sale by a third party who would subsequently resell to plaintiff after the divorce.
*172 Plaintiff was in the real estate business and apparently well-to-do, but most of his assets were not in liquid form and he, therefore, did not have the necessary capital available to finance this venture. He was finally able, however, to interest the defendant, William H. Kay, president and owner of nearly all of the stock of defendant, Kay Realty Company, in this plan, and on the day prior to the foreclosure sale, Kay arrived in Fort Lauderdale, Florida.
The parties, upon discussing the matter between them, agreed that Kay would bid at the sale up to the sum of $100,000 and if successful, execute an option to plaintiff to repurchase. Inasmuch as the divorce was not yet final, a direct loan to plaintiff would have been unavailing to divest the wife of her interest, and for the same reason, the option had to be given in the name of someone other than plaintiff.
The sale was held and the property bidin for the sum of $86,500 for the defendant, Kay Realty, by a Florida attorney and officer of the company, Welcom Watson. After the sale, the parties and their legal counsel then adjourned to the office of Mr. Watson, where the repurchase option was executed in favor of plaintiff's nephew, Thomas J. Rossetti, for a period of six months at a price broken down as follows:

Amount bid for real estate $86,500.00
10% interest on above 8,650.00
2% bonus on $86,500 1,730.00
Amount to be loaned on furniture 10,000.00
Travel to Florida by Defendant 245.00
 ___________
 $107,125.00
 ===========

The sum for the furniture was included because Kay wanted it to go with the house and it had not been covered by the mortgage and title remained in Mr. and Mrs. Amendola. The $10,000 figure was later reduced to $5,000 when plaintiff's wife claimed and removed one half of it.
During the months following the mortgage foreclosure sale, plaintiff attempted to sell the house and the upkeep and yard work were paid for by defendants at plaintiff's request. During this interim period, defendant, Kay Realty Company, secured a $50,000 mortgage on the house to reduce the amount of the capital invested in the transaction. Finally, on the 23rd day of February, 1956, plaintiff ordered his nephew, Rossetti, the option holder, to assign the option to him and on the next day he reassigned it to a third party who exercised it for $118,500. Plaintiff then paid to defendant, Kay Realty Company, the amounts called for in the option contract as adjusted for the furniture, plus the following:

Property upkeep expenses $313.80
Interest on furniture advance 600.00
Interest on $50,000 mortgage
secured by Kay Realty 958.33
Closing costs on $50,000 mortgage 383.50
 _______
 $2,255.63
 =========

for a total paid to defendants of $104,380.63. The plaintiff then brought this suit alleging usury.
Four points are raised by appellants, which are as follows:
First, that the Trial Court erred in refusing the defendants the right to interpose and prove the defense of unclean hands. This defense was sought to be raised by defendants' answer, but was struck by the Chancellor, presumably as having been insufficiently set forth; the right being given, however, to amend within ten days of the order.
The record shows that no such amendment was ever filed by defendants, therefore, the issue of unclean hands must be deemed to have been waived.
The second point raised was that the transaction involved here was not a loan and repayment but was simply a sale and purchase transaction. We do not agree. It is well settled in Florida that the law will look to the substance of the transaction rather than to the form to determine usury.
*173 Our usury statutes show a clear legislative intent to prevent accomplishment of a usurious scheme by indirection, and the concealment of the needle of usury in a haystack of subterfuge will not avail to prevent its pricking the body of the law into action.
In the words of F.S. § 687.03, F.S.A., "It shall be usury and unlawful for any person * * * to reserve, charge or take for any loan, or for any advance of money, * * * a rate of interest greater than ten per cent per annum, either directly or indirectly, by way of commission for advances, discounts, exchange, or by any contract, contrivance or device whatever * * *".
The admitted facts considered together with the testimony and the exhibits all point toward this being a loan transaction. The parties at all times appear to have regarded this option transaction as a loan; all efforts being directed toward the period after the divorce of plaintiff from his wife when the property would be returned to him by exercise of the option. At no place in the record does it appear that plaintiff did not consider himself obligated to repurchase.
The money necessary to the success of the plan was advanced by a stranger to plaintiff for his benefit, in a form calculated to secure the property where a direct loan would have been unavailing prior to the divorce.
Reference at many places in the testimony is made to the phrase "10 percent plus two" which has been explained to mean interest at ten per cent plus a two per cent bonus or commission, ten per cent being the maximum legal interest in Florida that is chargeable to an individual. In a legitimate or regular option contract, the question of interest would never arise. In addition, the parties during the option negotiations were warned by defendant's attorney, Watson, to have a care for the usury laws and not to discuss "ten percent plus two" but rather to talk in terms of a "twelve percent return profit".
The plaintiff after the contract was signed exercised acts of dominion over the property consistent with an attitude of ownership such as changing locks, paying or arranging for upkeep and maintenance and arranging the eviction of his wife from the house. After the exercise of the option and before a deed would be given by defendants, a general release of both Kay and Kay Realty was required of plaintiff, the only purpose of which would have been to prevent a suit for usury by plaintiff against the defendants.
At the closing of the sale of the house by defendants, the "option price" was not adhered to, but all the expenses of the care of the property plus the interest on the mortgage loan obtained by defendants and the closing charges for that loan were passed on to plaintiff. Had this been an option in fact as well as in form, it would have been refused by plaintiff as a breach of the agreement, but he did not refuse to pay and in fact, did pay these items.
It is basic to the usury theory that the controlling factor in arriving at the real substance of a transaction is the intention of the parties. Griffin v. Kelly, Fla. 1957, 92 So.2d 515; and in this case the weight of the evidence leans toward a loan disguised as an option.
The next point to be taken under consideration is whether or not there was, in fact, a rate of interest charged in excess of that allowed by law and whether that interest exceeded the rate of 25%, thus calling for the forfeiture of both interest and principal as decreed by the Chancellor below under the terms of F.S. § 687.07, F.S.A. In this connection, as in the matter of whether or not a transaction is a loan, the question of intent becomes controlling. As this Court said in the case of Stewart v. Nangle, Fla.App. 1958, 103 So.2d 649, 653, in order to constitute usury, there must be corrupt intent to take more than the *174 legal rate for the money loaned. This is not determined by the fact of whether the lender actually gets more than the law permits, but whether there was a willful purpose in his mind to get more than legal interest. And continuing from the opinion,
"`A thing is willfully done when it proceeds from a conscious motion of the will, intending the result which actually comes to pass.'"
Further, in the case of Griffin v. Kelly, Fla. 1957, 92 So.2d 515, 519, the Florida Supreme Court quoted with approval Professor Corbins' words from his work on contracts at page 946, to the effect that "`The only difference between a lawful transaction * * * and one that is usurious and unlawful is found in the intentions and purposes of the parties; it is the difference between "good faith" and "bad faith". The parties are themselves permitted to testify as to their purposes and intentions.'"
This intent, or lack of intent, to exact interest at a usurious rate is determined as of the inception of the transaction. Carter v. Leon Loan & Finance Co., 108 Fla. 567, 146 So. 664; Shorr v. Skafte, Fla. 1956, 90 So.2d 604; Coral Gables First National Bank, etc. v. Constructors of Florida, Inc., etc., Fla.App. 1960, 119 So.2d 741. Applying these requirements then to the case under consideration and looking specifically at the time the "option agreement" was entered, we believe that as of this time it was the intention of the defendants to make a loan of $96,500 computed as follows:

 Loan on house $86,500.00
 Loan on furniture 10,000.00
 _____________
 $96,500.00
 =============

The amounts above were later modified by mutual agreement by the reduction of the furniture item to $5,000 leaving a balance of $91,500, which loan was to run for the period of six months (the term of the "option").
For the loan of this sum repayment was to be made of the sum of $102,125 as follows:

 House $86,500.00
 Furniture 5,000.00
 Interest on house 10,380.00
 Expense of travel by
 Defendant to Florida 245.00
 _____________
 $102,125.00
 =============

The above makes the sum of $10,625 payable as interest for the period of six months which should be doubled to find the true annual rate of interest which amounts to 22.4%.
There still remains the question of the costs exacted from the plaintiff upon the execution of the option referred to previously and which consisted of the upkeep costs on the property, the interest on the $50,000 mortgage and the closing costs on the same mortgage, and finally a sum of $600.00 for interest on the $5,000 furniture advance.
Although the Chancellor below made no express findings of fact, it is implicit in his decree that these sums formed no part of the loan transaction between the parties because the sum awarded the plaintiff made no provision for them. With this we agree and will not disturb the judicial discretion of the learned Trial Judge.
The final point involved as to whether the mere ownership of a majority of the stock of a corporation by a person renders him personally liable for the acts of the corporation, need not be considered at length.
The judgment was rendered jointly against the defendants and there is ample evidence in the record to support this. The transaction was so commingled that it becomes impossible to say with certainty whether or not it was Kay or the Kay Realty Company acting. Title to the furniture was taken in the name of Kay as an individual, whereas title to the property was taken in the name of Kay Realty Company. *175 In addition, it is seen from the record that a great majority of the stock in the corporate defendant was owned by the defendant, William H. Kay, and that he elected officers and directors and after the sale of the property dealt with it more or less as an individual by moving in and occupying it.
The decree appealed from is reversed insofar as the forfeiture of both principal and interest was ordered and the case is remanded with directions that the Chancellor enter a decree consistent with this opinion. Reversed in part and remanded.
KANNER, Acting Chief Judge, and SHANNON, J., concur.