DAVID G. McCLURE vs. OBADIAH WILLIAMS.

RUTLAND,
February,
1835.

Where the maker of a note infected with usury, in consideration that the holder should cancel or discharge the same, promises to give a new note, deducting the usurious excess, such promise will be enforced in law.

This was an action of assumpsit. The declaration consisted of two special counts and a general count. The evidence offered in support of the general count was the same as the facts detailed in the two special counts. The court decided that the evidence offered was insufficient to enable the plaintiff to support his action; whereupon the plaintiff entered non-suit, under a rule that the plaintiff have leave to move in the next supreme court for leave to set aside said non-suit, and for a new trial.

The declaration was as follows:

"In a plea of the case for this, that the said Obadiah, at Middletown, aforesaid, to wit, on the 15th day of October, A. D. 1831, being indebted to the said David in divers large sums of money, specified in certain promissory notes, one dated April 1, 1821, for sixty dollars; one dated April 1, 1821, for one hundred and twelve dollars; one dated May 5, 1825, for thirty dollars and fifty-three cents; and one dated January 11, 1828, for ten dollars and twenty-four cents; which said notes had been changed for others, to wit, for one note dated September 1, 1831, for three hundred dollars, for one note dated September 1, 1828, for fifty-three dollars and seventy-nine cents; also for one note dated September 1, 1828, for thirty dollars, and two others of the same date for thirty dollars; the said Obadiah, in consideration that the said David would give up all of said notes not before given up to the defend-

ant, and would discharge him, the said Obadiah, from all liability thereon, and would expunge and deduct from said last mentioned notes all illegal interest and all interest in any way reserved more than six per cent on said notes and on the said sums of money so originally loaned by the said David to the said Obadiah, agreed to give the said David a new note for the said sum that should so be found due after all illegal interest had been so deducted as aforesaid, as soon as the computation necessary to ascertain the amount of unlawful interest could be made, and the sum expunged ascertained, said computation to be made by Orson Clark; and said computation having been made by said Orson, and the amount due after deducting all illegal interest having been ascertained to be, errors excepted, two hundred and fifty eight dollars and eighty-three cents, on the said 15th day of October, A. D. 1831. The said David, at various times, and particularly on or about the first day of March, A. D. 1832, offered said notes to said Obadiah and offered to discharge said Obadiah from all liability on said notes, if he would execute a note to him, the said David, for the last mentioned sum aforesaid, or such sum as should be proved due by the said Orson Clark, after expunging all unlawful interest as aforesaid, as by his said agreement the said Obadiah was bound to do. And the said Obadiah refused and neglected to execute said note for the said sum of two hundred and fifty-eight dollars and eighty-three cents, or for any sum, whereby the said Obadiah become, was and is liable to pay the said David the said sum so found due on said first mentioned notes, deducting all illegal interest therefrom, and being so liable, then and there promised to pay the same, yet refuses. Also for this, that the said Obadiah, at Middletown aforesaid, to wit, on the 15th day of October, A. D. 1831, being indebted to the said David in divers large sums of money, specified in certain promissory notes, in which illegal interest had been reserved. In consideration that the said David would agree to deduct and abate all the illegal interest from said notes and discharge the said Obadiah therefrom, and would deduct and abate all illegal interest from said notes and would discharge the said Obadiah therefrom, agreed to and with the said David to pay him the said sum that should remain and be found due on said notes, after deducting all illegal interest reserved on the same, and to pay the same in one year therefrom, and to execute a note to the plaintiff to that effect; and the said David then and there agreed to deduct and abate all illegal interest from said notes and discharge the said Obadiah therefrom, and the said David has offered to deduct and abate all illegal interest from said notes, and to discharge said Obadiah from said notes, and ever since said agreement, has been ready and is now ready so to do; by reason whereof the said Obadiah became, was and is liable to pay the said David the said sum remaining due, after deducting said illegal interest, and being so liable, to wit, on the 15th day of October, promised to pay the same."

RUTLAND,
February,
1835.

McClure
vs.
Williams.

Mr. *Ormsbee* for plaintiff.

Mr. *Clark* for defendant.

The opinion of the court was delivered by

MATTOCKS, J.—If a note has been given upon an usurious consideration, and afterwards by consent of the parties it is given up, the contract rescinded and a new note taken for the sum really due, it was never doubted but what the new security was valid. In the case of *Edgell* vs. *Stanford*, 6 Vt. Rep. 551, it was, after a very full investigation, decided, that when a note not tainted with usury was given up for a new one that was so infected, and the last having been avoided by a plea of usury, the first note, or the debt for which it was given, was revived, or regarded as not extinguished, and the plaintiff entitled to recover such debt. Although this decision certainly lessens the power and tenor of the statute, yet the conclusion the court came to was irresistible from the authorities, both English and American. It goes upon the settled doctrine, that to constitute usury to avoid the debt, the corrupt agreement must have been at the inception of the contract; for however thoroughly it is concocted afterwards, it does not reach back, as no subsequent violation of the law will make the contract usurious *ab initio*. Therefore, although it is contrary to the statute to take over six per cent. interest on a legitimate note, yet doing so inflicts no vital injury to the note or contract itself. The plaintiff then, if he had declared upon the parent notes, which were pure, and which the corruption of the offspring has not reached, might have recovered, he making the necessary averments to let in the secondary proof, or for the money which was the consideration of the notes, under the general count, upon the authority of the case cited, provided the last notes had been avoided by a plea of usury. In this case there is no count upon the notes but a general count, which will cover the money lent, for which the first notes were given; and therefore the only question upon this count is, whether the second notes being still uncancelled and unavoided, will vary the case upon principle.

As an usurious note is only void at the option of the debtor, ordinarily it would be premature for the creditor to blacken his own note, when it looks fair upon its face, and it is not known that the debtor means to resist the payment; and therefore he should not resort to his first security when the second is in life. But when it has appeared that the last note was always void, then it appears that it could not be payment, satisfaction or discharge of the original

RUTLAND,
*February,*
1835.

McClure
*vs.*
Williams.

debt. Now take the facts stated in the special counts, which the plaintiff offered to prove under the general count, to wit, that the parties agreed that the notes were usurious, that the excess should be deducted and the notes given up to be cancelled, upon the payment of the true sum which the defendant promised to pay. This would seem to be tantamount to a refusal to pay the whole of the notes, and a mutual rescinding of the unlawful contract contained in the notes, and in this equitable action of money had and received, entitles the plaintiff to recover his original debt, as if no notes had ever been given. And why are not the special counts good? If the usurious notes had been cancelled, and a new note taken for the true sum only, there would be no doubt neither in law nor in justice. The offence consists in taking unlawful interest. The contracting to take or accept was never a crime. The making the contract void, not only as to the interest, but as to the principal, is *in terrorem.* The lender is regarded as the seducer, who from his superior power and art, has his victim at his mercy. Yet if he relents before the deed is done, the crime is not perpetrated. The contract declares only the intent. Taking the money is committing the crime. Between them is the *tempus penitentiæ.* If then he repents, although it be from fear, and stops after the first, the last will never come, and therefore he retreats in time. The taint of usury is indeed upon him, but if the borrower promises to pay the honest debt, why is not the promise binding? The cash lent is still due and unpaid, and therefore as much a moral right and duty as a sum justly due on a note against which the statute of limitations has run, or that has been discharged by a certificate of bankruptcy; and no reason is perceived why the promise need be in writing in this any more than in those cases. In those cases, the original contract or note having been valid, it is declared upon, and the new promise removes the bar. Here the new promise is declared upon, because the first security was void, and the second good, which some judges have intimated should be the mode in case of a new promise, which avoids the statute of limitations.

The practice of taking usurious interest, if viewed in the true light, the distress and injury it produces in society, is a great crime against the public good; and in my individual opinion, it would have been better if the statute had been extensive enough to destroy all remedy in every shape where there was the least tincture of usury in any part of a contract. But such has not been ours nor the English statute upon this subject, nor the decisions upon them; and as the statute is, if a man who has a legal right to insist

RUTLAND,
*February,*
1835.

McClure
*vs.*
Williams.

on usury and defeat the creditor of his whole debt, chooses to waive this advantage, and promises to pay the *bona fide* part of the demand, we think such a promise can be enforced in accordance with the principles of the decisions upon this subject.

Judgment of county court reversed.