H. L. CHANDLER, and ANNIE G. CHANDLER, his wife, *Appellants*, v. H. L. KENDRICK, *Appellee*.

146 So. 551.

Opinion filed February 24, 1933.

*G. C. Durrance* and *Sumner & Sumner,* for Appellants;

*J. C. Bills, Jr.,* and *Paul W. Pottfer,* for Appellee.

TERRELL, J.—In February, 1927, Kendrick, the Appellee, and McDaniel loaned Chandler, the Appellant, $7,250 and received a note for $7,500 secured by a mortgage. The dif-

ference of $250 between the note and amount actually loaned was never paid. The loan was for one year and bore interest at eight per cent. payable quarterly. In February, 1928, when the loan matured Kendrick purchased the interest of McDaniel and extended the loan for one year. Chandler paid the interest and an additional consideration of $150. In 1929 when the loan matured Kendrick granted a second extension for a year and Chandler paid the interest and an additional consideration of $100. In 1930 when the loan matured Kendrick granted a third extension of one year and Chandler paid the interest and an additional consideration of $50. In November, 1930, Kendrick filed his bill to foreclose claiming $7,500 with interest from the date of the last interest payment. Before any defense to the bill was interposed Kendrick filed his amended bill alleging that the $250 difference between the face of the mortgage and the amount actually loaned was a voluntary offer on the part of Chandler, that it was never paid nor did he (Kendrick) have any intention of charging it and that it was his understanding that the cash payments of $150, $100 and $50 made at the time of the extension were voluntary contributions on the part of Chandler to compensate him for his trouble and expense of traveling from his home and return to see Chandler in regard to the extensions, there being in all eight or ten of these trips of 300 miles each.

Chandler answered the bill as amended, admitting the execution of the note and mortgage, denied that he owed Kendrick $7,500 and tendered the defense of usury. On final hearing the Chancellor entered a decree in favor of Kendrick in the sum of $7,250 with interest in the sum of $1,256.66 together with $132 for an insurance premium paid by Kendrick as per terms of the mortgage. This appeal is from that final decree.

. It is admitted that the mortgage contract was technically usurious. The question we are called on to answer is whether or not under the facts as stated it was willfully so and condemned by Section 4852 Revised General Statutes of 1920, Section 6939 Compiled General Laws of 1927.

The very purpose of statutes prohibiting usury is to bind the power of creditors over necessitous debtors and prevent them from extorting harsh and undue terms in the making of loans. Under the law and the decisions, usury is a matter largely of intent. It is not fully determined by the fact of whether the lender actually gets more than the law permits, but whether there was a *purpose in his mind to get more* than legal interest for the use of his money, and whether, by the terms of the transaction and the means employed to effect the loan, he may by its enforcement be enabled to get more than the legal rate. Benson v. First Trust and Savings Bank, ___ Fla. ___ 142 So. 887; R. C. L. pp 223, 224.

A thing is willfully done when it proceeds from a conscious motion of the will, intending the result which actually comes to pass. It must be designed or intentional, and may be malicious, though not necessarily so. "Willful" is sometimes used in the sense of intentional, as distinguished from "accidental" and when used in a statute affixing a punishment to acts done willfully, it may be restricted to such acts as are done with an unlawful intent. Clark v. Grey 101 Fla. 1058, 132 So. 832; United States v. Boyd (C. C.) 45 Fed. 851, text 855; State v. Clark 29 N. J. Law 96.

. To work a forfeiture under the Statute the principle must knowingly and willfully charge or accept more than the amount of interest prohibited by it. The evidence shows that Kendrick was an unsophisticated woodsman, and had no purpose whatever of charging more than the amount actually loaned with eight per cent. interest, that Chandler

was a banker and a business man of experience, that the terms of the contract originated with Chandler, that Kendrick never intended to charge nor did he ever claim but the $7,250 actually loaned, and that the cash consideration paid at the time of the extensions were made were voluntary payments made by Chandler to compensate Kendrick for his trouble and expense in arranging the extensions. The allegations of the amended bill were amply supported by the record.

The $150 paid Kendrick at the time the first extension was granted, if added to the interest paid would make an amount slightly more than ten per cent. of the sum actually loaned but under the facts stated it should not have been so added as it was in no sense a sum charged for the use of the loan. The Chancellor so found and there is ample support for his finding. All other sums were within the allowable rate.

Under the facts in this case the judgment below was correct and is affirmed.

Affirmed.

Davis, C. J., and Whitfield, J., concur.

Buford, J., dissents.

Buford, J. (dissenting).—The only question presented to us for consideration is whether or not the Chancellor erred in rendering a decree for the sum of $7250.00, the actual amount of the indebtedness with interest from the date in February when the last interest payment was made to date of decree and thereby not requiring a forfeiture of all interest because of the taint of usury in the contract.

The record shows that before any defense was interposed by the defendants in the court below the complainant amended his bill and by amendment alleged that the actual

amount of the loan was only $7250.00 and alleged that the sum of $150.00, $100.00 and $50.00 above mentioned were paid for forbearance and extension and specifically renounced any right to claim the $250.00 included in the note in excess of the loan. By this amendment to the original bill of complaint before the date upon which the defendants were required to plead, the complainant specifically disclaimed any right to charge the said sum of $250.00 against the defendants.

The complainant was a co-payee of the original note and was assignee of the McDaniel interest in the note after maturity. The note was in violation of Sections 4851 R. G. S. 6938 C. G. L., as construed by this Court in the case of Wilson et ux. v. Conner; filed June 14, 1932, and reported 142 So. 606. The amount of the interest paid in accordance with the usurious contract appears to have been $600.00 in addition to the $250.00 withheld in 1927 and $750.00 in 1928. There was no unlawful usury charge or demand after February 5th, 1928. Therefore, the Chancellor should have deducted from the principal $600.00 plus $750.00, making a total of $1350.00, which being deducted from $7250.00 would leave the amount of principal due $5700.00, upon which interest should have been calculated from February 5th, 1930.

I think to this extent the decree of the Chancellor is erroneous and, therefore, should be reversed with directions that a decree be entered not inconsistent with the views here expressed and otherwise conforming to the original final decree.