103 So.2d 649 (1958)
Earl W. STEWART and Evelyn A. STEWART, his wife, Appellants,
v.
John S. NANGLE et al., Appellees.
No. 361.
District Court of Appeal of Florida. Second District.
June 4, 1958.
Rehearing Denied June 25, 1958.
*650 Stephen R. Magyar, Orlando, Neal D. Huebsch, Eustis, for appellants.
Jackson A. Cargill, Orlando, for appellees.
ALLEN, Judge.
This is an appeal from a final decree in a foreclosure suit which held that the involved transaction was usurious. Plaintiffs appeal.
Earl W. Stewart and wife, Evelyn A. Stewart, sued John S. Nangle, Golden Dolomite Company and others to foreclose a certain mortgage which secured two notes in the total amount of $18,750.
Paragraph (g) of the defendant's answer alleged usury as follows:
"The promissory notes and the mortgage deed referred to in the complaint were given by the defendants who executed the same, for loans made by plaintiffs upon which said loans the plaintiffs wilfully and knowingly charged, demanded and accepted interest at a rate greater than 10% per annum and also at a rate greater than 25% per annum, and in which said transactions the debtors were required and obligated to pay a sum or sums of money greater than the actual principal sum received plus interest at the rate of 10% per annum and also plus interest at the rate of 25% per annum, contrary to and in violation of Chapter 687 of Florida Statutes of 1955 [F.S.A.]."
The trial judge heard the testimony of the parties personally and made the following findings of fact:
"The Defendant, John S. Nangle, doing business as The Golden Dolomite Company, was engaged in mining and sale of dolomite, a mineral product, and needed capital for his business operation. He negotiated a loan from plaintiffs, Earl W. Stewart and Evelyn A. Stewart, husband and wife, upon the following terms, to-wit: Interest at the rate of six (6%) per cent per annum and an investment bonus of one (1¢) cent per ton for every ton of dolomite shipped per month for each sum of $2,500. loaned. Plaintiffs and defendant, John S. Nangle, through testimony confirmed this agreement without any substantial conflict. Interest and bonus payments were payable monthly. The agreement was never reduced to writing or, if reduced to writing, no such agreement in writing was produced at the trial.
"The plaintiffs, on or about December 1, 1949, loaned defendant $7,500.00. Defendant executed a note in favor of plaintiff, Earl W. Stewart, in that amount bearing six (6%) per cent interest payable ninety days after demand, note dated December 1, 1949. Thereafter, on about February 1, 1950, the loan was increased another $7,500. and, on or about April 1, 1950, the loan was increased to a total of $18,750.00. To evidence these subsequent loans, defendant executed another note in favor of plaintiffs Earl W. Stewart and Evelyn A. Stewart, in the amount of $11,250. dated December 31, 1950, *651 bearing six (6%) per cent interest and payable two years after demand.
"The defendant, John S. Nangle, joined by his wife, the defendant, Ruby Lee Nangle, executed a mortgage to secure the payment of the above mentioned notes, said mortgage dated August 14, 1953, and describing the following described lands situate in Citrus County, Florida, to-wit:
"S 1/2 of the NW 1/4 of SE 1/4; the E 1/2 and the SW 1/4 of the SE 1/4; all in Section 25, Township 17 South, Range 16, East, Citrus County, Florida.
"The parties stipulated and agreed that the lands intended to be mortgaged should have been described as follows:
"The South Half (S 1/2) of Northwest Quarter (NW 1/4) of Southeast Quarter (SE 1/4), the East Half (E 1/2) of Southwest Quarter (SW 1/4), and the Southwest Quarter (SW 1/4) of Southeast Quarter (SE 1/4) of Section 25, Township 17 South, Range 16 East.
"In accordance with the loan agreement heretofore stated in these findings the defendant, John S. Nangle, paid with reasonable regularity to the plaintiff, the monthly interest and bonus payments based upon tonnage and amount of investment. After May 1, 1950, and beginning with the month of April, 1950, defendant paid to plaintiff interest at the rate of six (6%) per annum on $18,750.00 or $93.75 monthly, and also mortgage note bonus payments figured at the rate of seven and one half (7 1/2) cents per ton for every ton of dolomite shipped each month. The mortgage note bonus payment for April, 1950, amounted to $250.62 and thereafter varied according to the tonnage shipped.
"These interest and mortgage note bonus payments continued through September of 1953. From the date of the initial loan (December 1, 1949,) through September 30, 1953, defendant paid plaintiffs

"Interest in the amount of $4,171.89
Mortgage note bonus in the
 amt. of 8,475.91
 __________
Total $12,647.80

"Interest and mortgage note bonus payments were not made after September, 1953. On September 4, 1953, plaintiff gave written demand to the defendant for payment of the notes. Thereafter, on July 18, 1956, this foreclosure proceeding was filed.
"It is the Court's observation that the plaintiffs entered into this loan agreement with the defendant in absolute good faith without any thought of its usurious character. The plaintiff, Earl W. Stewart, worked for the defendant for a period of approximately six years, rendering good service, with the plaintiff and the defendant having a mutual respect and trust for each other. It is also acknowledged that this loan was solely sought and solicited by the defendant. Nevertheless, these circumstances have no real bearing upon the issue.
"The total amount of interest and mortgage note bonus payments exceeded the statutory maximum return of ten (10%) per cent and is clearly in violation of Section 687.03 of the 1955 Laws of Florida [F.S.A.]. The mortgage note bonus payment, or by whatever other name these payments might be called which are calculated on the basis of one (1¢) cent per ton of dolomite shipped monthly for every sum of $2,500. loaned can only be considered as a return upon the loan brought about by a contemporaneous collateral agreement. See Cooper v. Rothman, 63 Fla. 394, 57 So. 985.

*652 "Upon the premises, I find that the interest and mortgage note bonus paid by the defendant represents a charge of interest greater than ten (10%) per cent per annum for the term of the loan, the term of which loan expired two years after September 4, 1953, the date of demand. It likewise exceeded ten (10%) per cent per annum at the time this foreclosure proceeding was commenced (July 18, 1956). Accordingly, the sum of $12,647.80 should be doubled and forfeited by the plaintiff; this amount doubled exceeds the principal loan of $18,750 and an appropriate decree will necessarily have to be entered in accordance herewith, the Court's personal feeling in the matter to the contrary notwithstanding."
It is apparent to this court that the conscientious chancellor, who personally heard the testimony of the parties below and decided the case contrary, as he stated, to his personal feelings in the matter, misconceived the force and effect of the word "willfully" as used in the usury statute. It will be noticed that the court, in its opinion, said:
"It is the Court's observation that the plaintiffs entered into this loan agreement with the defendant in absolute good faith without any thought of its usurious character. The plaintiff, Earl W. Stewart, worked for the defendant for a period of approximately six years, rendering good service, with the plaintiff and the defendant having a mutual respect and trust for each other. It is also acknowledged that this loan was solely sought and solicited by the defendant. Nevertheless, these circumstances have no real bearing upon the issue."
In the case of Clark v. Grey, 1931, 101 Fla. 1058, 132 So. 832, 834, the following appears:
"`* * * It, moreover, harmonizes with the doctrine, now universally recognized, that the whole question of usury is one which depends very greatly upon the intent of the parties to the contract. Uhlfelder v. Carter's Adm'r, 64 Ala. 527; 1 Jones Mortg. § 634. The first note given by appellant in this case, which was for the sum of six hundred dollars, was confessedly usurious, the interest on it being at the rate of twelve and a half per cent. per annum. If, as the evidence tends strongly to show, this usurious note was reduced to the lawful rate of eight per cent., and the usury of the first note was expunged entirely on taking the note in suit, then the plea of usury in this action can not be sustained. McClure v. Williams, 7 Vt. 210; Miller v. Hull, 4 Denio, N.Y., 104.'
"In Ector v. Osborne, 179 N.C. 667, 103 S.E. 388, 389, 13 A.L.R. 1207, it is said:
"`There are four requisites of a usurious transaction: (1) There must be a loan, express or implied; (2) an understanding between the parties that the money lent shall be returned; (3) that for such loan a greater rate of interest than is allowed by law shall be paid or agreed to be paid, as the case may be; and (4) there must exist a corrupt intent to take more than the legal rate for the use of the money loaned.' Doster v. English, 152 N.C. 339, 341, 67 S.E. [754], 755.
"`"The corrupt intent mentioned in the books consist in the charging or receiving the excessive interest with the knowledge that it is prohibited by law and the purpose to violate it. Our statute makes it usury if the interest is knowingly charged or received at the unlawful rate." MacRackan v. Bank of Columbus, 164 N.C. 24, 26, 80 S.E. [184], 185, 49 L.R.A.,N.S., 1043, Ann.Cas. 1915D, 105.'"
*653 In the case of Chandler v. Kendrick, 1933, 108 Fla. 450, 146 So. 551, 552, the Supreme Court said:
"(1) The very purpose of statutes prohibiting usury is to bind the power of creditors over necessitous debtors and prevent them from extorting harsh and undue terms in the making of loans. Under the law and the decisions, usury is a matter largely of intent. It is not fully determined by the fact of whether the lender actually gets more than the law permits, but whether there was a purpose in his mind to get more than legal interest for the use of his money, and whether, by the terms of the transaction and the means employed to effect the loan, he may by its enforcement be enabled to get more than the legal rate. Benson v. First Trust & Savings Bank, 105 Fla. 135, 142 So. 887; R.C.L. pp. 223, 224.
"(2, 3) A thing is willfully done when it proceeds from a conscious motion of the will, intending the result which actually comes to pass. It must be designed or intentional, and may be malicious, though not necessarily so. `Willful' is sometimes used in the sense of intentional, as distinguished from `accidental,' and, when used in a statute affixing a punishment to acts done willfully, it may be restricted to such acts as are done with an unlawful intent. Clark v. Grey, 101 Fla. 1058, 132 So. 832; United States v. Boyd, C.C., 45 F. 851, text 855; State v. Clark, 29 N.J.L., 96."
The principles hereinabove enunciated were reiterated by the Florida Supreme Court in the case of Jones v. Hammock, 1937, 131 Fla. 321, 179 So. 674, 676, in which case the Court said:
"`To work a forfeiture under the statute, the principal must knowingly and willfully charge or accept more than the amount of interest prohibited by it. The evidence shows that Kendrick was an an unsophisticated woodsman, and had no purpose whatever of charging more than the amount actually loaned, with 8 per cent. interest, that Chandler was a banker and a business man of experience, that the terms of the contract originated with Chandler, that Kendrick never intended to charge nor did he ever claim but the $7,250 actually loaned.'
* * * * * *
"This court has held in an action where usury was interposed as a defense, in Benton v. Wilkins, 118 Fla. 491, 159 So. 518, that:
"`Defense of usury, where interposed to avoid or defeat obligation to pay money, must be established by clear and satisfactory evidence.'"
In a case recently decided by this court, Shaffran v. Holness, Fla.App. 1958, 102 So.2d 35, 39, the principles governing the defense of usury were reiterated. The court quoted from Jones v. Hammock, supra, as follows:
"`This court has held that one of the requisites of a usurious transaction is that there must exist a corrupt intent to take more than the legal rate for the use of money loaned (Clark v. Grey, 101 Fla. 1058, 132 So. 832), and that usury is largely a matter of intent and is not fully determined by the fact of whether the lender actually gets more than the law permits, but whether there was a purpose in his mind to get more than legal interest for the use of his money (Benson v. First Trust & Savings Bank, 105 Fla. 135, 134 So. 493, 142 So. 887, 145 So. 182). Also to work a forfeiture under the statute the principal must knowingly or wilfully charge or accept more than the amount of interest prohibited. Chandler v. Kendrick, 108 Fla. 450, 146 So. 551, 552.' Argintar v. Lydell, 132 Fla. 45, 180 So. 346."
*654 The case of Shorr v. Skafte, Fla. 1956, 90 So.2d 604, is not contrary to the principles hereinabove set forth as in that case the Supreme Court held that where lender charged $1,000 interest for a loan of $5,000 for six months, and lender claimed that he was not aware of violation of the usury laws, but no evidence was offered by way of explanation, statute providing for forfeiture and penalty in case of willfully excessive interest or charges was applicable.
We are not holding in this case that the transaction involved in the lower court was not usury, as that fact must be determined on a new trial before the lower court. We are reversing this case for a new appraisal by the Judge of the lower court under the principles hereinabove enunciated.
Reversed.
KANNER, C.J., and SHANNON, J., concur.