HORTON, Judge.
The defendants below seek review of a final decree entered in a mortgage foreclosure. This litigation,- involving sums in excess of two million dollars, arose from certain loans and mortgages entered into by and between defendant DuPont Plaza, Inc., and plaintiff Samuel Kipnis Family *353 Foundation. In addition, certain individuals who were the principal stockholders of DuPont Plaza, Inc., were named as defendants.
A brief summary of the facts is as follows. The defendant corporation, under a 99-year lease, commenced construction of a multi-purpose building. This venture was originally financed by a $3,500,000 construction loan through the Mercantile National Bank of Miami Beach, Florida. On April 12, 1957, the corporation gave a second mortgage of $500,000 to the plaintiff Foundation. In November, 1957, the plaintiff Foundation advanced $1,050,000 to the defendant corporation, for which the plaintiff received an assignment of the 99-year lease interest. On January 25, 1958, Samuel Kipnis, trustee, advanced an additional $150,000 at 15% per annum, at which time the defendant corporation delivered the sum of $69,198.94 to Kipnis. The evidence in the record is conflicting as to the purpose of this sum delivered to Kipnis. The appellants contend that at all times, Kipnis held the entire $69,198.94 as cash security for the loan of $150,000. Appellee Kipnis contends that only $39,198.94 represented security for the $150,000 loan and that the remaining $30,000 constituted a security deposit to indemnify liens for any monies he might have been required to pay by virtue of a guarantee to the Arkin Construction Company, Inc., which guarantee was entered into in behalf of appellant DuPont Plaza, Inc.
In anticipation of a first mortgage loan in the amount of $4,850,000 from Massachusetts Mutual Life Insurance Company, the parties entered into an agreement, on May 31, 1958, wherein it was agreed, inter alia, that the plaintiff Foundation would advance an additional $1,500,000; the existing loans of $500,000 and $150,000 were to be extended; the 99-year lease was to be assigned to defendant corporation; and, upon closing of the permanent loan with Massachusetts Mutual, the 99-year lease was to be reconveyed to Samuel Kip-nis; that Kipnis was to execute to defendant corporation a 10-year sublease under the 99-year lease. In addition, defendant corporation was given an option to purchase the 99-year lease so owned by Samuel Kipnis. Accordingly, the first mortgage to Massachusetts Mutual was executed, the 99-year lease was assigned to defendant corporation and then further reassigned to Samuel Kipnis, who then executed the anticipated 10-year sublease. This 10-year lease was then encumbered by a mortgage to the plaintiff Foundation for $1,500,000, dated January 25, 1958. This loan was further secured by a pledge of stock by the individually named defendants. In addition, in accordance with the agreement of May 31, 1958, defendant corporation instituted a declaratory decree action which resulted in a final decree holding the agreement to be valid and free of usury. The original circuit court file in the declaratory decree proceedings is a part of the record on appeal. On March 18, 1959, the defendant paid the $150,000 note with interest at 15% and received in return the sum of $69,198.94. This payment was made under protest that the loan was usurious.
On June 25, 1959, an interest payment became due on the $1,500,000 mortgage loan, and on August 21, 1959, Samuel Kip-nis instituted a landlord and tenant proceedings in the civil court of record. This cause was dismissed, the civil court of record judge concluding that Kipnis’ claim was exclusively cognizable in a court of equity. The original civil court of record file in the landlord-tenant proceedings is a part of the record here.
On September 25, 1959, Samuel Kipnis Family Foundation instituted the instant foreclosure action, whereby it alleged that the defendant corporation was in default on the $75,000 interest payment and that because of this default, the entire balance of $1,500,000, plus interest, was due and payable. The plaintiff Foundation therefore sought to foreclose the mortgage encumbering the 10-year lease and further sought to have the pledged stock sold for the satisfaction of this indebtedness.
*354 On October 1, 19S9, a payment in the amount of $95,399.50 became due on the first mortgage to Massachusetts Mutual and this was paid by plaintiff Foundation. The complaint was then supplemented to seek recovery for this additional amount.
By their answers to the complaint and the supplement to the complaint, the defendants averred that the Foundation had wilfully and knowingly charged and accepted interest in excess of 25% per annum upon the principal sum of $150,000, the loan of January 25, 1958, and as a result, had forfeited the entire sum, both principal and interest, and therefore, the defendants contended, at the time the interest payment of $75,000 on the $1,500,000 became due and at the time the $95,399.50 payment to Massachusetts Mutual became due, the plaintiff Foundation was indebted to the defendant corporation in a sum far in excess of these amounts.
The defendants further averred that the $1,500,000 note was not secured by a mortgage upon a term of years, that is, that the civil court of record had determined that there was no landlord-tenant relationship and accordingly, there was nothing upon which the mortgage could be foreclosed.
During the course of the trial, and without objection from the defendants, the plaintiff offered evidence in proof that the $500,000 loan was also in default and had therefore been accelerated, the entire amount, plus interest, becoming due and owing. The trial court, inter alia, found:
“Installments of interest in the sums of $75,000 each became due and payable by the corporate defendant, Dupont Plaza, Inc. to plaintiff on the note for $1,500,000.00 on June 26, 1959 and December 26, 1959, and neither of such installment payments of interest were paid when due or thereafter; the principal amount of the note for $1,500,000.-00 was accelerated and declared due and payable by plaintiff under the terms of the note and mortgage therefor after the default in nonpayment of the $75,-000.00 interest payment due June 26, 1959 and none of such principal amount of $1,500,000.00 was paid when it became due by the acceleration or thereafter. On October 1, 1959 an installment of interest and principal in the amount of $95,399.50 became due and payable by the corporate defendant, Dupont Plaza, Inc. to Massachusetts Mutual Life Insurance Company under a note in the principal amount of $4,-850,000.00 secured by a mortgage, which note and mortgage defendant, Dupont Plaza, Inc. obligated itself under the mortgage herein being foreclosed to keep in good standing and not default in, and to which the $1,500,000.00 note and mortgage herein are subordinate, and when such installment of $95,399.50 was not paid by defendant, Dupont Plaza, Inc., plaintiff did pay it, and none of the $95,399.50 has been paid to plaintiff. The unrefuted evidence revealed that another installment payment also in the amount of $95,399.50 became due and payable by the corporate defendant, Dupont Plaza, Inc. to Massachusetts Mutual Life Insurance Company on January 1, 1960 and such installment payment had not yet been paid at the time of the hearings herein. An installment of interest in the sum of $37,500.00 on the $500,000.00 mortgage became due and payable by the corporate defendant, Dupont Plaza, Inc. to plaintiff on November 15,1959 and none of it was paid when due or thereafter; the principal amount of the note for $500,000.00 was accelerated and declared due and payable by plaintiff under the terms of the note therefor after the default in nonpayment of the $37,-500.00 interest payment due November 15, 1959, and none of such principal amount of $500,000.00 was paid when it became due by the. acceleration or thereafter.
“There is hereby found and decreed to be due from the corporate defendant, Dupont Plaza, Inc., to the Plaintiff and *355 secured by the mortgage and pledge herein being foreclosed, the following sums of money which are hereby found and decreed to be and which do constitute a lien upon the mortgaged and pledged property hereinafter described:
“For Principal of $1,500,-000.00 note $1,500,000.00
“For interest on $1,500,-000.00 note for payments due June 26, 1959 and December 26, 1959 150,000.00
“For payment of $95,399.-50 paid by Plaintiff to Massachusetts Life Insurance Company for payment due it by Dupont Plaza, Inc. on October 1, 1959 under its $4,850,000.-00 mortgage 95,399.50
“Total $1,745,399.50
plus interest on $1,500,000.00 at the rate of 10% per annum, which is at a daily rate of $410.95, for the period from and including December 27, 1959 to date hereof and plus interest on $95,399.50 at the rate of 10% per an-num, which is at the daily rate of $26.13 for the period from October 13, 1959 to the date hereof.
“In addition, there is also hereby found and decreed to be due from the corporate defendant, Dupont Plaza, Inc., to the plaintiff, the following sums of money which are:
“For interest on $500,000.-00 note for payment due on November 15, 1959 $ 37,500.00
“For principal of $500,000 note 500,000.00
“Total $537,500.00
plus interest on $500,000.00 at the rate of 15% per annum, which is at a daily rate of $205.47 for the period from and including November 16, 1959 to date hereof.”
The chancellor further decreed:
“The defendants and each of them are hereby enjoined from removing from said mortgaged property any of the furnishings, fixtures and equipment described in Section 11(a) above, which furnishings, fixtures and equipment are included in the above described Ten (10) Year Sublease recorded in official Record Book 883 commencing at Page 377 of the Public Records of Dade County, Florida.
“The defendants and each of them and the officers, directors, employees, stockholders, agents and attorneys of the corporate defendant, Dupont Plaza, Inc. and each of them are hereby enjoined from paying out or expending any of the monies of the corporate defendant, Dupont Plaza, Inc., except for payments in the regular course of business for the following: payroll, merchandise purchased, utilities and payments due and payable on secured indebtedness of the corporate defendant, Dupont Plaza, Inc., and for monies due hereunder.”
Basically, the appellants contend first, that at the time of the alleged default for failure to make the $75,000 payment, DuPont Plaza, Inc., was entitled to set-off the statutory usury penalty resulting from the $150,000 loan transaction and accordingly, the $1,500,000 loan was not in default; second, that the judgment on the promissory note of $500,000 was improper because said note was not secured by the mortgage sought to be foreclosed, was not sued upon or mentioned in the complaint, did not form a part of the subject matter of the suit and was not a proper subject of equity jurisdiction; third, that the final decree foreclosed a mortgage upon a lease which was nonexistent, therefore, there was no lien upon a res to form the subject of an equitable action; and finally, that the chancellor erred in enjoining the corporate *356 appellant, its officers, directors, stockholders, agents and attorneys from expending the corporate funds.
Under the first point, the appellants argue that the appellee Foundation was a mere alter ego of appellee Samuel Kipnis and that through the loan of $150,000, the Foundation had collected usurious interest in excess of 25% and therefore subjected itself to the penalty[1] provided by § 687.07, Fla.Stat., F.S.A. It is this penalty which the appellants sought to set-off against the interest payments due on the $1,500,000 note and thereby defeat the acceleration clause.
The authorities are not in agreement as to whether a claim for a penalty, to which one who has paid usury is entitled under applicable statutory provision, may be asserted by a defendant in an action by the alleged usurer which arises, not out of the alleged usurious transaction or instrument, but out of a separate and distinct transaction or instrument. The majority of the jurisdictions hold that set-off or similar relief is not available. Annotation 54 A.L.R.2d 1353.
The current Florida Rules of Civil Procedure make no provision for pleas of set-off; however, the permissive counterclaim is closely analogous to such a plea.[2] On permissive counterclaims it is immaterial whether the counterclaim is legal or equitable or in contract or in tort, or even whether it has any connection with the plaintiff’s claim. Jones-Mahoney Corp. v. C. A. Fielland, Inc., Fla.App.1959, 114 So.2d 18, and Rule 1.13, Florida Rules of Civil Procedure, 30 Fla.Stat., F.S.A., and comment thereon.
It would appear in view of the Jones-Mahoney Corp. case, construing Rule 1.13, FRCP, and that line of cases such as Chakford v. Sturm, Fla.1953, 65 So.2d 864,[3] holding that usury may be the basis of an independent action to obtain affirmative relief, that a set-off of a penalty for usury is permissible in an action by the alleged usurer to recover on an obligation distinct from that allegedly tainted by usury.
Although there is conflicting evidence as to whether or not the loan transaction was technically usurious, we do not feel compelled to determine that question at this time.
The appellee strenuously argues, and we note, that the usury statute[4] provides forfeiture for “wilful” violations only. Usury is lai'gely a matter of intent, which is determined not by whether a lender actually gets more but whether there was a purpose in his mind to obtain more than legal interest. Chandler v. Kendrick, 108 Fla. 450, 146 So. 551; Jones v. Hammock, 131 Fla. 321, 179 So. 674; Maule v. Eckis, 156 Fla. 790, 24 So.2d 576; Shaffran v. Holness, Fla.App.1958, 102 So.2d 35; Stewart v. Nangle, Fla.App.1958, 103 So.2d 649; Silverstein v. Wakefield, Fla.App.1959, 112 So.2d 406.
As the Supreme Court of Florida indicated in Shorr v. Skafte, Fla.1956, 90 So.2d 604, 607:
“Certainly a man’s actions are indicative of his intentions. Although it is not conclusive the fact that the amount stated in the note is greater than the amount loaned evidences the intent to violate the law. No evidence having been offered by way of explanation the view that infraction was intended is justified. * * * We conclude that the circumstances establish clearly a purpose to collect unconscionable interest and that this purpose could not be explained away by a profession of ignorance on the part of the lender.”
However ambiguously a transaction may be handled does not necessily render *357 it usurious. See American National Growers Corporation v. Harris, Fla.App.1960, 120 So.2d 212. This essential element of the intent of the lender is a matter of proof. Dezell v. King, Fla. 1956, 91 So.2d 624; Parker v. Bryce, Fla.1957, 96 So.2d 154; Stewart v. Nangle, supra.
We have carefully reviewed the record and conclude that where, as here, the chancellor’s finding is based upon conflicting evidence, an appellate court is not warranted in disturbing his conclusion unless it is clearly erroneous. See Clausi v. Casner Motors, Inc., Fla.App.1959, 112 So.2d 587; and cf. American Airmotive Corp. v. Ellman, Fla.App.1958, 101 So.2d 834; Silverstein v. Wakefield, supra.
The remaining questions raised and argued by the appellants have been duly considered and found to be without merit.
Accordingly, the decree appealed is affirmed.

. Forfeiture of the entire sum, both principal and interest.

. 8 Fla.Jur., Counterclaims, § 3.

. Young v. Wilder, Fla.1955, 77 So.2d 604.

. § 687.07, Fla.Stat., F.S.A.