276 So.2d 817 (1973)
Paul L. DIXON and Ann C. Dixon, Petitioners,
v.
Frank H. SHARP, Respondent.
No. 42730.
Supreme Court of Florida.
April 4, 1973.
Rehearing Denied May 22, 1973.
*818 Arthur L. Steed, of Steed & Collins, Orlando, for petitioners.
Stephen P. Kanar, of Fishback, Davis, Dominick & Simonet, Orlando, for respondent.
ROBERTS, Justice.
This cause is before this Court on conflict certiorari granted to review the decision of the District Court of Appeal, Fourth District in Dixon et al. v. Sharp reported at 265 So.2d 105 (Fla.App. 1972) which purportedly conflicts with Stewart v. Nangle, 103 So.2d 649 (Fla.App. 1958) and Chandler v. Kendrick, 108 Fla. 450, 146 So. 551 (1933). We have considered the cases cited for conflict and have determined that we have jurisdiction pursuant to Fla. Const. Art. V § 3(b)(3), F.S.A.
Respondent, Frank Sharp, who was the defendant below, entered into a contract to purchase certain property through a real estate firm in which petitioner, Paul Dixon, was a salesman. Sharp gave his check for $10,000 as a deposit on the purchase price, and immediately even without the transaction having been closed, authorized Dixon to list the property for resale at a higher price. Since Sharp could not cover the check and since the check for $10,000 could not be held by the real estate firm without depositing it, he requested Dixon to lend him $10,000 and explained that he was short on cash but had some money coming in on citrus futures. He requested that Dixon loan him the sum of $10,000 for sixty (60) days and as an inducement and of his own volition proposed to give Dixon the sum of $500 as a bonus and also agreed that if Dixon had to borrow the money he would pay the interest required to be paid. As further inducement, Sharp also promised that he would give Dixon a real estate salesman listings on various property and also told Dixon that the only way he could complete the contract for sale previously referred to would be to obtain the loan. Dixon declined advising that he had no such funds to lend, but suggested that he would make inquiry of his wife who owned certain Coca Cola stock. Mrs. Dixon at first expressed a lack of interest. However, because of Sharp's imploring and because of Sharp's many years of friendship with her husband, she agreed to pledge her stock at the bank in order to secure a loan of $10,000 to lend Sharp, whereupon Sharp suggested that instead of $500, he would pay a $700 bonus in addition to the interest required to be paid by the Dixons on the contemplated loan. After depositing the 209 shares of Coca Cola stock with College Park National Bank, and executing a note to said bank for $10,000 payable on demand with interest at the rate of eight percent, the Dixons received a cashier's check payable to them in the amount of $10,000. Before the loan to Sharp was consummated, the Dixons suggested that they and Sharp obtain legal advice but Sharp announced that this would be unnecessary that he would simply sign the note, pay the bonus and interest equal to the interest payable by the Dixons to College Park National Bank. The sum of $10,000 was then given by the Dixons to Sharp who in their presence wrote, executed and delivered a promissory note for $10,700 at eight percent interest payable fifty-six (56) days later.
Following maturity of the note and upon Sharp's failure to pay, petitioners instituted suit for the face value of the note, together with interest and attorney's fees. Subsequently their complaint was amended to reduce the principal sum claimed from $10,700 to $10,000.
Answer was filed by respondent denying the various allegations of the complaint. Subsequently, Sharp filed an Amended Answer in which he admitted executing and *819 delivering a promissory note to the Dixons and that he had failed to pay the note when it became due and which by affirmative defense charged usury and counterclaimed seeking cancellation of the obligation, both principal and interest.
Having heard testimony of all the witnesses and having considered the briefs filed, depositions taken, answers to interrogatories, all other pleadings filed, and argument of counsel, the trial court entered final judgment on September 18, 1970 for the Dixons and against Sharp, reciting,
"The court finds as to Count 1 the defendant failed to carry the burden of proving by competent evidence the allegations contained in the counterclaim and the court further finds that there is insufficient evidence that plaintiffs were guilty of willfully and knowingly charging or accepting any sum of money greater than the sum of money loaned plus a sum in excess of 25 percent per annum and that there was no intent on the part of plaintiffs to take any advantage of the defendant, and that the plaintiffs had no intent to do anything illegal or corrupt and that therefore, there was no usury in this contract, under Florida Statute, 687.07 [F.S.A.]." (emphasis supplied)
Initially, the trial court found that the transaction here involved, in as far as the loan is concerned, was initiated by Sharp and it was solely and affirmatively his idea and it was Sharp's voluntary offer to pay the bonus amount of $700. It is noteworthy that no one was in distress nor necessitous when the note was made.
An appeal was taken from that Final Judgment which resulted in a reversal and an opinion of the Fourth District Court of Appeal reported at 252 So.2d 805 (Fla. App. 1971), wherein that Court remanded the cause to the trial court for determination as to whether the lenders had an intent to charge or receive excessive interest at the time of execution of the note. The opinion of the District Court declared that the trial court had construed the intent element of usury to require an intent to violate the statute rather than an intent to charge an amount of interest in excess of that prohibited by statute. However, the trial court clearly found that the Dixons did not have a corrupt intent to charge more than the legal rate of interest.
Pursuant to remand, a Final Judgment was entered by the trial court on December 27, 1971, in favor of Sharp, adjudging that pursant to Fla. Stat. 687.071,[1] F.S.A., the subject promissory note was unenforceable. Therein the trial court expressly stated,
"The court construes the decision of the District Court of Appeal in this case to indicate that the requisite intent to establish the defense of usury can be determined from a mathematical computation of the consequences of the agreement entered into between the parties." (emphasis supplied)
Appeal from this judgment was taken by the Dixons and resulted in Affirmance without opinion by the District Court. Petition for certiorari was thereafter filed in this court on behalf of the Dixons.
The Four requisites of a usurious transaction are, (1) There must be a loan express or implied; (2) An understanding between the parties that the money lent shall be returned; (3) That for such a loan a greater rate of interest than is allowed by law shall be paid or agreed to be paid, as the case may be; and (4) There must exist a corrupt intent to take more than the legal rate for the use of the money loaned. Stewart v. Nangle, 103 So.2d 649 *820 (Fla.App. 1958); Clark v. Grey, 101 Fla. 1058, 132 So. 832 (1931).
The instant cause involves only a dispute as to the fourth element of usury, an intent willfully and knowingly to take more than the legal rate of interest for the money borrowed.
Florida Courts recognize that usury is largely a matter of intent, and is not fully determined by the fact that the lender actually receives more than law permits, but is determined by existence of a corrupt purpose in the lender's mind to get more than legal interest for the money lent. Chandler v. Kendrick, 108 Fla. 450, 146 So. 551 (1933); Jones v. Hammock, 131 Fla. 321, 179 So. 674 (1938); Maule v. Eckis, 156 Fla. 790, 24 So.2d 576 (1946); Shaffran v. Holness, Fla., 93 So.2d 94; Stewart v. Nangle, 103 So.2d 649 (Fla. App. 1958); Connecticut Mutual Life Insurance Co. v. Fisher, 165 So.2d 182 (Fla. App. 1964). To work a forfeiture under the statute the principal must knowingly and willfully charge or accept more than the amount of interest prohibited. Chandler v. Kendrick, supra; Argintar v. Lydell, 132 Fla. 45, 180 So. 346 (1938).
Relative to the purpose of the usury statute and the definition of willfully and knowingly, this Court in Chandler v. Kendrick, supra, 146 So. at 552 succinctly states,
"The very purpose of statutes prohibiting usury is to bind the power of creditors over necessitous debtors and prevent them from extorting harsh and undue terms in the making of loans. Under the law and the decisions, usury is a matter largely of intent. It is not fully determined by the fact of whether the lender actually gets more than the law permits, but whether there was a purpose in his mind to get more than legal interest for the use of his money, and whether, by the terms of the transaction and the means employed to effect the loan, he may by its enforcement be enabled to get more than the legal rate. Benson v. First Trust & Savings Bank [105 Fla. 135, 134 So. 493], 142 So. 887 [145 So. 182]; R.C.L. pp. 223, 224."
"A thing is willfully done when it proceeds from a conscious motion of the will, intending the result which actually comes to pass. It must be designed or intentional, and may be malicious, though not necessarily so. `Wilful' is sometimes used in the sense of intentional, as distinguished from `accidental,' and, when used in a statute affixing a punishment to acts done willfully, it may be restricted to such acts as are done with an unlawful intent. Clark v. Grey, 101 Fla. 1058, 132 So. 832; United States v. Boyd, (C.C.[Ark.]) 45 F. 851, text 855; State v. Clark, 29 N.J.Law 96."
He who alleges usury to avoid or to defeat an obligation to pay money must establish his charge by clear and satisfactory evidence. Wicker v. Trust Co. of Florida, 109 Fla. 411, 147 So. 586 (1933); Benton v. Wilkins, 118 Fla. 491, 159 So. 518 (1935); Shaffran v. Holness, 102 So.2d 35 (Fla.App. 1958); Diversified Enterprises, Inc. v. West, 141 So.2d 27 (Fla. App. 1962).
Originally the trial court in the instant case determined that there was insufficient evidence to show that plaintiffs had willfully and knowingly charged or accepted the sum of money lent plus a sum in excess of the legal interest rate. Then upon reversal and remand the trial court erroneously interpreted the decision of the Fourth District Court of Appeal to mean that a simple mathematical computation can determine necessary intent to make a debt unenforceable. If a mere mathematical computation is determinative of intent then the words "intent" and "willfully and knowingly" have no force or effect and might just as well be deleted from the statute.
For the defense of usury to be established, the circumstances surrounding *821 the entire agreement must be proved, and they must be carefully scrutinized by the court. Griffin v. Kelly, 92 So.2d 515 (Fla. 1957); Diversified Enterprises, Inc. v. West, supra.
The court explicitly asserted in River Hills, Inc. v. Edwards, Fla.App., 190 So.2d 415, 423, as follows:
"The intent is not fully determined by whether or not the lender actually gets more or charges more than the law permits but by whether or not there was an improper motive in his mind to get more than the legal interest (Clark v. Grey, supra; Stewart v. Nangle, supra; Shaffran v. Holness, Fla.App., 102 So.2d 35) at the time the loan agreement is entered and, if usurious at that time, no subsequent transaction will purge it. (Shorr v. Skafte, Fla., 90 So.2d 604) The difference between a lawful transaction and usurious one, therefore, is the difference between "good faith" and "bad faith". The parties are permitted to testify as to their purposes and intentions, and the question of intent is to be gathered from the circumstances surrounding the entire transaction. (See Diversified Enterprises, Inc. v. West, Fla.App., 141 So.2d 27, 31; Kay v. Amendola, Fla.App., 129 So.2d 170)."
"That the lender willfully and with corrupt intent charged or accepted more than the prohibited interest must be specifically and affirmatively pleaded and established by clear and satisfactory evidence. (Chandler v. Kendrick, 108 Fla. 450, 146 So. 551; Argintar v. Lydell, 132 Fla. 45, 180 So. 346; Benton v. Wilkins, 118 Fla. 491, 159 So. 518) The requisite corrupt or purposeful intent, however, is satisfactorily proved if the evidence establishes that the charging or receiving of excessive interest was done with the knowledge of the lender. (Stewart v. Nangle, supra; MacRackan v. Bank of Columbus, 164 N.C. 24, 80 S.E. 184, 49 L.R.A.,N.S. 1043, Ann.Cas., 1915D, 105; Shorr v. Skafte, supra; Jones v. Hammock, 131 Fla. 321, 179 So. 674; Shaffran v. Holness, supra) (emphasis supplied)
In Stewart v. Nangle, supra, the District Court of Appeal, Second District, considered all the circumstances surrounding the loan transaction to make its determination that the lender did not have the requisite willful intent to charge a usurious rate of interest. Therein after a lengthy discussion of the elements of usury with emphasis on the element of intent, the court concluded that the trial court's action, because of misconception of the force and effect of the word "willfully" as used in the usury statute, in disregarding the fact that lenders entered into a loan agreement in absolute good faith without any thought of its usurious character was improper.
Respondent relies on the decision of this Court of Shorr v. Skafte, 90 So.2d 604 (Fla. 1956), also cited by the Fourth District Court of Appeal in its first decision in Sharp v. Dixon, supra, to support his position that a mathematical computation alone is sufficient to indicate the requisite intent to establish the defense of usury. The facts in Shorr, supra, are materially different from the instant suit. Shorr involved a suit to foreclose a mortgage given to secure a promissory note evidencing an indebtedness of $6,000. The defendant denied the indebtedness of $6,000 and averred that he was lent only $5,000. He charged in his answer, the plaintiffs by contrivance, contract and device, willfully and knowingly charged him a sum of money greater than the amount loaned and an additional sum exceeding 25% per annum upon the principal by reason of which the plaintiff forfeited, under Sec. 687.07, Florida Statutes, 1951, F.S.A. the entire principal and interest. Upon an extensive consideration of the circumstances of the loan transaction this court stated,
"The ignorance of the borrower is of small consequence; the importance factor is the willfulness of the lender. And the matter of willfulness is not absolutely *822 closed by the bare statement of the lender that he was unconscious of wrongdoing. If such were the law the prohibition would amount to nothing. The circumstances must be taken into account and here the principal one is, as we wrote in the beginning, quite simple. By mere mathematical computation $1000 is 20% of $5000, and when figured on a yearly basis is 40% of the principal amount per annum. If we were to accept the view that the computation even if comprehended by the lender was meaningless because the statute was unknown to him, we would subscribe to the rule that ignorance of the law is a complete defense to usury and that the irrefutable statement of that ignorance would relieve a would-be usurer from any penalty for his transgression. Certainly a man's actions are indicia of his intentions. Although it is not conclusive the fact that the amount stated in the note is greater than the amount loaned evidences the intent to violate the law. No evidence having been offered by way of explanation the view that infraction was intended is justified." (emphasis supplied)
This Court's decision of Shorr v. Skafte, supra, therefore, does not stand for the principle that mathematical computation alone will suffice in determining requisite intent as respondent seems to propound.
We, here, reiterate the principle above enunciated and previously set out by this Court in Wicker et ux. v. Trust Co. of Florida, 109 Fla. 411, 147 So. 586 (1933), that he who alleges usury as a defense to avoid his obligation must establish all the elements of his charge by clear and satisfactory evidence.
We find that the District Court of Appeal, Fourth District, in its decision entered July 24, 1972, reported at 265 So.2d 105, erred in affirming the Final Judgment of the trial court finding that requisite intent can be determined solely from mathematical consequences of the agreement entered into between the parties. Corrupt intent should be determined from all the circumstances surrounding the transaction rather than being determined by an inflexible rule which measures the mathematical result.
The Final Judgment of the trial court entered on September 18, 1970, after hearing testimony of all the witnesses, in favor of the Dixons was a proper disposition of this cause. All subsequent proceedings inconsistent with that judgment were either moot or erroneous.
Accordingly, the decision of the District Court of Appeal, herein sought to be reviewed, is quashed and this cause is returned to that court with directions to remand the cause to the trial court with instructions to reinstate the judgment entered by the trial court on September 18, 1970. Beverly Beach Properties v. Nelson, 68 So.2d 604 (page 607) (Fla. 1953).
It is so ordered.
CARLTON, C.J., and ADKINS, McCAIN and DEKLE, JJ., concur.
ERVIN, J., dissents with opinion.
BOYD, J., dissents with opinion.
ERVIN, Justice (dissenting):
The majority have correctly focused on the element of "corrupt intent" as the requisite for determining whether a usurious transaction occurred in this cause. That element is proved when the evidence establishes that a "charging or receiving of excessive interest was done with the knowledge of the lender." (original emphasis) River Hills, Inc. v. Edwards, 190 So.2d 415 (Fla.App. 1966), at 424.
In determining whether the Dixons knew that they were charging and receiving excessive interest, the trial court should have borne in mind that the lenders here were entirely unlike the unsophisticated woodsman *823 who unwittingly lent money to a banker at an excessive rate of interest, as was the case in Chandler v. Kendrick, 108 Fla. 450, 146 So. 551 (Fla. 1933), upon which the majority chooses to rely for conflict purposes.
We are dealing with two successful business people. The facts reveal that they knowingly put themselves squarely in a position clearly violative of our usury laws.
The promissory note was executed in favor of the Dixons on October 20, 1969. Section 687.071, F.S.A., was then in effect, having repealed Section 687.07. F.S.A., less than three weeks previously (October 1, 1969). A comparison of these statutory provisions suggests that the Legislature intended to provide much stiffer penalties for "loan sharks" and "shylocks," as those terms are defined in Section 687.071. Whereas under the old provision a party charging an interest rate of 25 per cent or greater was deemed guilty of a misdemeanor, under the new law a differentiation is made for those charging a highly exorbitant rate in excess of 45 per cent; they are deemed guilty of a felony.
The interest which the Dixons "reluctantly" charged (after the "bonus" amount is added to the 8 per cent) totals over 50 per cent. When we portray the petitioners as naive business people duped into lending money at a felonious interest rate, we excuse them by rationalization and go a long way toward emasculating the usury laws.
BOYD, J., concurs.
BOYD, Justice (dissenting):
I must respectfully dissent.
The majority opinion reaches the unique conclusion that the usury laws of Florida are directed only against persons who loan money at an unconscionable rate of interest while being aware that such conduct is a violation of law. All citizens are presumed to know the law. Practically all normal adults know there are maximum interest rates fixed by law. Ignorance of the law is no excuse for crime or other misconduct.
As I construe the statute, one can be excused from violating the usury laws only if in the unlawful interest rate results from honest errors of judgment such as mathematical or typing mistakes. This law should be uniformly applied to all offenders.
A sense of compassion at times makes it unpleasant to enforce usury laws under conditions such as in this case. If the law is too harsh, it should be softened by the legislature and not by the Courts.
NOTES
[1] Ch. 69-135 Laws of Florida repealed Florida Statute 687.07, F.S.A., Fla. Stat. 687.071, F.S.A. was enacted by Ch. 69-135 and became effective October 1, 1969. Under both the old and the new statute, in order for there to be a forfeiture of principal and interest, there must be a willful and knowing charge or acceptance of a designated unlawful rate of interest.