658 So.2d 531 (1995)
JERSEY PALM-GROSS, INC., Petitioner,
v.
Henry PAPER, et al., Respondents.
No. 84158.
Supreme Court of Florida.
July 20, 1995.
*532 Daniel S. Pearson and Lucinda A. Hofmann of Holland & Knight, Miami, for petitioner.
Robert W. Weinberger of Cohen, Chernay, Norris, Morici, Weinberger & Harris, North Palm Beach, for respondents.
ANSTEAD, Justice.
We have for review Jersey Palm-Gross, Inc. v. Paper, 639 So.2d 664 (Fla. 4th DCA 1994), in which the Fourth District certified conflict with Forest Creek Development Co. v. Liberty Savings & Loan Ass'n, 531 So.2d 356 (Fla. 5th DCA 1988), review denied, 541 So.2d 1172 (Fla. 1989). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We approve the decision below, and disapprove Forest Creek insofar as it holds that a usury savings clause precludes, as a matter of law, a finding of usury.

FACTS AND PROCEDURAL HISTORY
We quote the following relevant facts from the Fourth District opinion below:
The borrowers [Henry Paper and Anthony V. Pugliese, III] were partners in a real estate partnership which required capital to build a multi-tenant office building. The partnership owned land consisting of three prime lots in West Palm Beach worth $1,700,000, subject to a purchase money mortgage of $1,100,000 that was due shortly. To satisfy the purchase money mortgage and construct an office building on the land, the borrowers went to a *533 bank to secure a loan. After obtaining an appraisal of the partnership assets and the project, the bank agreed to lend the partnership most of the needed capital. The loan amount, however, was $200,000 short of the estimated partnership needs. The borrowers needed a "bridge-the-gap loan."
The borrowers approached Walter Gross (Gross), a real estate developer, and suggested that he become an equity partner in the partnership for an investment of $200,000. Gross reviewed the partnership assets and appraisal. Fully aware of the partnership's financial picture and needs, he refused to become an investor, but agreed to lend the partnership $200,000 and charge an interest rate of 15% for eighteen months, amounting to $45,000 in interest charges. By the time of closing, Gross had formed the appellant corporation, Jersey Palm-Gross, Inc., for the purpose of making the loan.
Shortly before closing, Gross presented the borrowers with loan documents which included a demand for a 15% equity interest in the partnership as additional consideration for making the loan. Gross did not attempt to hide his motives for exacting an interest in the partnership. He testified that the partnership interest was an inducement to make the loan, even though he had previously agreed to loan the money at a 15% interest rate. Gross knew the value of the partnership based on the borrowers' disclosures and was aware of the borrowers' urgent need for funds. The borrowers were in desperate financial straits. With closing imminent, they were in no position to bargain or to seek another source of the money.
The lender brought suit when the borrowers failed to repay the loan. The borrowers' defense was that the loan was usurious from its inception, and therefore, an unenforceable debt because the consideration for the loan, which included the partnership interest and the 15% interest rate, totaled 45% per annum in interest.
... .
The trial court here made factual findings, on the evidence presented, that the net equity value of the partnership at the time the loan was made, based on partnership assets of $1,700,000 and debts of $1,100,000, was $600,000... . The trial court correctly calculated the effective interest rate at 45% per annum over the eighteen month loan period, with the partnership interest of $90,000 (15% interest in partnership valued at $600,000) added to the $45,000 in interest charges (15% interest rate on loan of $200,000). The cost of the loan totaled $135,000, which was an effective interest rate of 45% on a loan of $200,000 for the eighteen month period of the loan.
639 So.2d at 666. After a non-jury trial, the trial court concluded that Gross had "knowingly and willingly" charged and accepted a usurious consideration in exchange for making the $200,000 loan transaction. Consequently, the trial court found the promissory note and guarantee unenforceable as usurious and ordered that Gross forfeit the entire principal amount of the loan pursuant to section 687.071(7), Florida Statutes (1991).
On appeal, Gross argued that the trial court had failed to properly consider a usury savings clause contained in the promissory note in determining the issue of intent. The Fourth District upheld the trial court's finding of usury and, in its analysis, posed the following question:
[W]hether the existence of a contractual disclaimer of intent to violate the usury laws commonly known as a "usury savings clause" in the loan documents in this case removes the determination of usurious intent from a factual inquiry and conclusively proves as a matter of law that the lender could not have "willfully" or knowingly charged or accepted an excessive interest rate.
639 So.2d at 668. In answering this question in the negative, the Fourth District held that "[a] usury savings clause is one factor to which the finder of fact should look in determining whether all of the circumstances surrounding the transaction support a finding of intent on the part of the lender to take more than the legal rate of interest for the use of the money loaned." Id. at 671.

*534 LAW AND ANALYSIS

The Florida Legislature enacted Chapter 687, Florida Statutes (1993), to protect borrowers from paying unfair and excessive interest to overreaching creditors. This chapter sets limits on interest rates and prescribes penalties for the violation of those limits. Section 687.071(2), Florida Statutes (1993), defines criminal usury as the willful and knowing charge or receipt of interest in excess of 25% per annum. Id. The civil penalty for violating this statute is forfeiture of the entire principal amount. § 687.071(7), Fla. Stat. (1993).
In Chandler v. Kendrick, we defined "willful" in the following manner:
A thing is willfully done when it proceeds from a conscious motion of the will, intending the result which actually comes to pass. It must be designed or intentional, and may be malicious, though not necessarily so. "Willful" is sometimes used in the sense of intentional, as distinguished from "accidental," and, when used in a statute affixing a punishment to acts done willfully, it may be restricted to such acts as are done with an unlawful intent.
108 Fla. 450, 452, 146 So. 551, 552 (1933). We also explained the purpose and meaning of the usury statute:
The very purpose of statutes prohibiting usury is to bind the power of creditors over necessitous debtors and prevent them from extorting harsh and undue terms in the making of loans... . It is not fully determined by the fact of whether the lender actually gets more than the law permits, but whether there was a purpose in his mind to get more than legal interest for the use of his money, and whether, by the terms of the transaction and the means employed to effect the loan, he may by its enforcement be enabled to get more than the legal rate.
Id. Subsequently, in Dixon v. Sharp, 276 So.2d 817, 820 (Fla. 1973), we noted that: "[U]sury is largely a matter of intent, and is not fully determined by the fact that the lender actually receives more than law permits, but is determined by existence of a corrupt purpose in the lender's mind to get more than legal interest for the money lent." Id. Moreover, "the question of intent is to be gathered from the circumstances surrounding the entire transaction." Id. at 821 (quoting River Hills, Inc. v. Edwards, 190 So.2d 415, 423-24 (Fla. 2d DCA 1966)). Consequently, the ultimate arbiter on the issue of intent is the trial court because "the question of intent is one of fact." Rebman v. Flagship First Nat'l Bank, 472 So.2d 1360, 1364 (Fla. 2d DCA 1985).

SAVINGS CLAUSES
A usury savings clause is a provision in a loan agreement that attempts to negate any other provisions in the agreement that might result in the extraction of an illegal rate of interest. The effect of a usury savings clause on a claim of usury has been addressed by several of our appellate courts. In Forest Creek, the Fifth District affirmed, without discussion, the dismissal of a count based on usury where the mortgage note contained a usury savings clause which provided:
In no event shall the amount of interest due or payment in the nature of interest payable hereunder exceed the maximum rate of interest allowed by applicable law, as amended from time to time, and in the event any such payment is paid by the undersigned or received by the Holder, then such excess sum shall be credited as a payment of principal, unless the undersigned shall notify the Holder, in writing, that the undersigned elects to have such excess sum returned to it forthwith.
531 So.2d at 357.
The Second District has approved of the trial court's consideration of a similar savings clause in determining whether a lender intended to charge excessive interest. In Szenay v. Schaub, 496 So.2d 883, 884 (Fla. 2d DCA 1986), the lenders contended that a genuine error had been made in calculating the amount of interest in the promissory note. Pursuant to the provisions of a usury savings clause, the trial court denied a usury claim and made an adjustment to the parties' agreement to bring the interest charged within legal limits. The district court held that although the agreement may have technically *535 provided for a usurious rate of interest, the trial court acted within its fact-finding authority in relying upon the savings clause to determine that the lender had no intent to charge such an amount. 496 So.2d at 884. Similarly, in First American Bank & Trust v. International Medical Centers, Inc., 565 So.2d 1369, 1374 (Fla. 1st DCA 1990), review denied, 576 So.2d 286 (Fla. 1991), the First District, while not directly addressing the effect of a savings clause, made the following observation:
We do note that provisions in loan documents limiting the amount of interest payable to that authorized under applicable law have been recognized as valid and enforceable in this state and provide a complete defense to a charge of usury. In a case such as this, where the effective interest rate found to be usurious is so near the allowable maximum depending on disputed legal principles of valuation, a strong showing indeed must be made to invalidate such provisions in the loan documents... . We do not, however, find it necessary to review the sufficiency of the record to support the trial court's adverse ruling on this issue.
Id. (citation omitted).
Because of the lack of extensive discussion, we cannot be certain of the circumstances present in Forest Creek. However, contrary to any implied holding in that case, we conclude that a usury savings clause cannot, by itself, absolutely insulate a lender from a finding of usury. Rather, we approve and adopt the Fourth District's holding, that a usury savings clause is one factor to be considered in the overall determination of whether the lender intended to exact a usurious interest rate. Such a standard strikes a balance between the legislative policy of protecting borrowers from overreaching creditors and the need to preserve otherwise good faith, albeit complex, transactions which may inadvertently exact an unlawful interest rate.
In rejecting the use of a savings clause as an absolute bar to a usury claim, we note, as have other courts, that a contrary holding would permit a lender to "relieve himself of the pains and penalties visited by law upon such an act by merely writing into the contract a disclaimer of any intention to do that which under his contract he has plainly done." First State Bank v. Dorst, 843 S.W.2d 790, 792 (Tex. Ct. App. 1992) (quoting Nevels v. Harris, 129 Tex. 190, 102 S.W.2d 1046, 1050 (1937)). If approved, we believe this practice would undermine public policy as set by the legislature and defeat the purpose of Florida's usury statute. Indeed, such a practice might encourage lenders to charge excessive interest, since, even if caught, the only penalty would be the loss of the excess interest.
However, we also believe that savings clauses serve a legitimate function in commercial loan transactions and should be enforced in appropriate circumstances. For instance, we agree with Judge Pariente's illustration, in the majority opinion below, of the proper utilization of a savings clause:
Where the actual interest charged is close to the legal rate, or where the transaction is not clearly usurious at the outset but only becomes usurious upon the happening of a future contingency, the clause may be determinative on the issue of intent.
Jersey Palm-Gross, 639 So.2d at 671. While not exhaustive, this illustration captures the essence of the legitimate use of a savings clause. This illustration is also consistent with the way savings clauses were discussed or applied in Szenay and First American Bank & Trust.

THIS CASE
We agree with the district court that there is no indication that the trial court in this case failed to apply the correct legal standard for determining usury or erred in its treatment of the savings clause. There is substantial competent evidence in the record to support the court's finding of usury. For example, there is evidence that the lender directly sought and received a 15% interest in the partnership, in addition to the 15% interest on the loan as initially agreed. The lender also knew "that the borrowers had an urgent need for the money." Jersey Palm-Gross, 639 So.2d at 668. These circumstances support the trial court's finding of an intent on the part of the lender to extract an *536 excessive rate of interest, and this finding, in view of those circumstances, is consistent with the law set out in Chandler and Dixon.
In addition, we note that there is no complex loan transaction involved here or any claim of a mistake in the mathematical calculations like that seen in Szenay; neither is the interest charged close to the legal limit as discussed in First American Bank & Trust. In short, unlike Szenay and First American Bank & Trust, there are no circumstances present that would require the trial court to apply the usury savings clause to avoid the excessive interest. Further, the entire additional consideration of the 15% interest in the venture would have to be stricken to avoid the excessive interest charged. As noted in First State Bank, that would clearly be giving effect to a lender's "disclaimer of any intention to do that which under his contract he has plainly done." We decline to mandate such an outcome here.
It is also noteworthy that the usury savings clause in this case was not included in the agreement granting the lender a 15% interest in the partnership. Rather, the savings clause was contained only in the promissory note which, of course, contained a provision for lawful interest of 15%, and contained no reference to the additional consideration demanded by the lender. Under such circumstances, it is questionable whether the savings clause was even intended to apply to the separate agreement for an interest in the venture.
Jersey Palm-Gross, Inc. also asserts that the trial court should have concluded that the instant transaction, while arguably providing for an excessive interest rate on the date of closing, was reduced to nothing more than a speculative hope for profit after the partnership incurred a debt of approximately $2,000,000 to finance its development project. We disagree.
First, it is important to note that at the same time the venture incurred a debt of $2,000,000, it received an asset of $2,000,000 in the form of proceeds of the development loan. Second, and more importantly, however, section 687.03(3), Florida Statutes (1993), in pertinent part instructs that:
[A]ny payment ... charged, reserved, or taken as an advance or forbearance, which is in the nature of, and taken into account in the calculation of, interest shall be valued as of the date received and shall be spread over the stated term of the loan, advance of money, line of credit, forbearance to enforce collection of a debt, or other obligation for the purpose of determining the rate of interest.
Pursuant to this section, the trial court was required to value the partnership interest as of the date received, which was March 27, 1990. The evidence presented at trial fully supports the trial court's valuation of the venture's worth on this date.
Lastly, if a trial court accepted the lender's position, it would be speculating as to the real estate development venture's chances of success at the time the lender joined the venture. That speculation, of course, could result in the lender's interest in the venture being set at an estimated value ranging from worthless to one many times its initial value. While there may be instances that might permit or require such speculation, we find no error in the trial court's failure to do so under the circumstances presented here. There is a sound and substantial basis in the evidence for the trial court's valuation, and for its ultimate finding on the usury issue.
Accordingly, we approve the Fourth District decision below and disapprove Forest Creek insofar as it is inconsistent with this opinion.
It is so ordered.
GRIMES, C.J., and SHAW, KOGAN, HARDING and WELLS, JJ., concur.
OVERTON, J., concurs with an opinion, in which WELLS, J., concurs.
OVERTON, Justice, concurring.
I concur because I believe that the trial judge, under the state of this record, could believe that the lender in this instance, at the time of making the loan, intended to charge a usurious rate of interest irrespective of the *537 savings clause in the loan documents. I write to emphasize that a savings clause is still a valid factor  but not the exclusive factor  in determining the intent of the lender at the time of making the loan. A savings clause should have the purpose of assuring that usurious interest is not charged. The borrower, as the movant or claimant, has the burden of proof to establish the usurious intent of the lender.
WELLS, J., concurs.