The Honorable Ken Jenne Sheriff, Broward County 2601 West Broward Boulevard Fort Lauderdale, Florida 33312
Dear Sheriff Jenne:
You ask the following question:
Is it a crime for a secondhand dealer engaging in a title loan transaction to charge a repossession fee in addition to the twenty-two percent interest provided in section 538.06, Florida Statutes, and to retain any proceeds from the sale of such motor vehicle in excess of the amount due on the loan?
In sum:
A secondhand dealer engaging in a title loan transaction who knowingly charges a repossession fee or other fee in addition to the twenty-two percent maximum monthly interest provided in section 538.06, Florida Statutes, or retains any proceeds from the sale of such motor vehicle in excess of the amount due on the loan, is subject to criminal prosecution pursuant to section538.07(1), Florida Statutes. In addition, the secondhand dealer may be subject to criminal prosecution for usury, theft and racketeering.
Chapter 687, Florida Statutes, regulates lending practices in this state and is designed to protect borrowers from paying unfair and excessive interest to overreaching creditors. This chapter sets limits on interest rates and prescribes penalties for the violation of those limits. Section 687.071, Florida Statutes, defines criminal usury and in subsection (3) of the statute states:
"Unless otherwise specifically allowed by law, any person making an extension of credit to any person, who shall willfully and knowingly charge, take or receive interest thereon at a rate exceeding 45 percent per annum or the equivalent rate for a longer or shorter period of time, whether directly or indirectly or conspire so to do, shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s.775.084."
The civil penalty for violating this statute is forfeiture of the entire principal amount.[1] Since the purpose of usury laws is to protect needy borrowers by penalizing unconscionable money lenders, for purposes of usury calculations courts will look beyond the form of a transaction to its substance.[2] Thus, the mere form of a transaction becomes immaterial, and a court will consider whether the transaction in effect exacts an interest rate higher than that allowed by law.[3]
In 1995, however, the Legislature amended Part I, Chapter 538, Florida Statutes, regulating the activities of secondhand dealers, to provide for motor vehicle title loan transactions.[4] Section538.06(5), Florida Statutes, allows secondhand dealers to engage in title loan transactions in which the secondhand dealer may retain possession of only the title to the motor vehicle, while the motor vehicle owner retains possession or control over the vehicle. These transactions are not pawns. The statute specifically prohibits a secondhand dealer from engaging in pawn transactions and title loan transactions from the same location, as well as the use of the words "pawn" or "pawnbroker" in any title loan transaction, documentation, advertisement, sign, or display.[5]
Section 538.06(5)(e), Florida Statutes, authorizes a second-hand dealer who accepts a motor vehicle title in a title loan transaction to charge a maximum fee of twenty-two percent per month. Subsection (5)(f) of the statute expressly provides:
"No charges other than those charges permitted in paragraph (e)shall be allowed, and said charges shall be fully disclosed, conspicuously in writing, and initialed by the motor vehicle owner at the initiation of the transaction." (e.s.)
Thus, section 538.06, Florida Statutes, constitutes a narrow exception to the usury provisions of Chapter 687, Florida Statutes. The statute, however, limits the charges that may be collected by a secondhand dealer in a title loan transaction to a maximum fee of twenty-two percent per month and specifically prohibits any other charges being imposed.
While section 538.06(5)(d), Florida Statutes, authorizes a secondhand dealer in a motor vehicle title loan transaction to repossess the motor vehicle upon failure of the owner to redeem the title, nothing in section 538.06, or elsewhere in Part I of Chapter 538, Florida Statutes, authorizes the imposition of a repossession charge.[6] The imposition of such an additional charge, or any other charge not provided for by statute, violates the manifest intent of the Legislature expressed in section538.06(5)(f), Florida Statutes, that no other charges be imposed in addition to a maximum amount equal to twenty-two percent per month.[7]
Similarly, the statute prohibits the secondhand dealer who repossesses and sells the motor vehicle from retaining any proceeds in excess of that outstanding on the loan.[8] For example, a motor vehicle could legally be repossessed and sold for several thousand dollars to pay an outstanding title loan debt of a few hundred dollars. If the lender were to receive the entire proceeds from the sale of the vehicle, the effective interest rate would be far in excess of the 22 percent per month (264 percent per year) allowed by law for title loan transactions. The retention of such proceeds, in effect, imposes an additional charge in excess of the twenty-two percent maximum fee and thus is impermissible.[9]
Section 538.07(1), Florida Statutes, provides that a person who knowingly violates any provision of Part I of Chapter 538, Florida Statutes, commits a misdemeanor of the first degree. Accordingly, a secondhand dealer who knowingly charges a repossession fee in addition to the maximum twenty-two percent interest or retains any proceeds from the sale of such motor vehicle in excess of the amount due on the loan, would be in violation of Part I, Chapter 538, and thus subject to criminal prosecution under this statute.
In addition, as noted above, the provisions of Part I, Chapter 538, Florida Statutes, relating to motor vehicle title loan transactions, constitute a narrow exception to the usury provisions of Chapter 687, Florida Statutes. A title loan transaction in compliance with the requirements of Part I, Chapter 538, therefore, would not be subject to the prohibitions relating to usury. If, however, the transaction violates Part I, Chapter 538, the transaction would no longer be an authorized title loan transaction afforded the protections of that part. In such instances, the provisions of Chapter 687 would apply, including the felony provisions relating to criminal usury.[10]
Other criminal statutes may also be implicated. For example, criminal theft occurs if a person has knowingly and unlawfully obtained the property of another with the intent to either temporarily or permanently deprive the victim of his or her right to the property.[11] In addition, multiple violations of criminal usury and theft statutes may form the basis of a criminal racketeering prosecution under section 895.03, Florida Statutes, provided all the other elements of the offense are established.[12]
Sincerely,
Robert A. Butterworth Attorney General
RAB/tall
[1] See, s. 687.071(7), Fla. Stat. (no extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state); and JerseyPalm-Gross, Inc. v. Paper, 658 So.2d 531, 534 (Fla. 1995) (civil penalty for violating s. 687.071 is forfeiture of the entire principal amount). And see, s. 687.04, Fla. Stat, which states that the penalty for violating the civil usury statute, s. 687.03, Fla. Stat., is forfeiture of the entire interest charged.
[2] Rollins v. Odom, 519 So.2d 652 (Fla. 1st DCA 1988). Andsee, Dixon v. Sharp, 276 So.2d 817, 820 (Fla. 1973) (purpose of usury law is "to bind the power of creditors over necessitous debtors and prevent them from exhorting harsh and undue terms in the making of loans").
[3] See, Beacham v. Carr, 166 So. 456 (Fla. 1936) (a court will not permit the use of a form designed to evade the evident purpose of the usury laws). And see, Mindlin v. Davis, 74 So.2d 789 (Fla. 1954); Rebman v. Flagship First National Bank of Highlands County,472 So.2d 1360 (Fla. 2d DCA 1985); May v. United States LeasingCorporation, 239 So.2d 73, 75 (Fla. 4th DCA 1970); Gilbert v.Doris R. Corporation, 111 So.2d 682, 684 (Fla. 3d DCA 1959).
[4] See, Ch. 95-287, Laws of Florida. And see, s. 538.03(1)(g), Fla. Stat., which defines "secondhand goods" to include motor vehicles.
[5] See, ss. 538.15(4) and (5), Fla. Stat.
[6] See, s. 538.16(1), Fla. Stat., stating that the property is subject to sale if title has not been redeemed from the title lender or there has been no payment made on account within 60 days. And see, s. 538.06(5)(d), Fla. Stat., which requires the secondhand dealer to repossess the motor vehicle through an agent who is licensed by the state to repossess motor vehicles. Any sale or disposal of the motor vehicle must be made through a motor vehicle dealer licensed under s. 320.27, Fla. Stat. Id.
[7] Compare, s. 516.031, Fla. Stat., setting maximum rates for finance charges and providing in subsection (3) that in addition to the interest and insurance charges provided therein, no further or other charges or amount may be directly or indirectly charged, contracted for, or received as a condition to the grant of a loan, except, among others, the "[a]ctual and commercially reasonable expenses of repossession, storing, repairing and placing in condition for sale, and selling of any property pledged as security." Part I, Ch. 538, Fla. Stat., like s. 516.031, Fla. Stat., states that no other charge may be imposed; unlike s.516.031, however, Part I, Ch. 538, does not authorize the imposition of repossession costs.
[8] And see, s. 679.504, Fla. Stat., which authorizes a secured party to sell the collateral after default and requires that if the security interest secures an indebtedness, the secured party must account to the debtor for any surplus. The provisions of the Uniform Commercial Code, of which s. 679.504 is a part, apply to Ch. 538, Fla. Stat., except that the provisions of Ch. 538 "shall take precedence over any provisions of this code which may be inconsistent or in conflict therewith." See, s. 671.304, Fla. Stat. Since Part I, Ch. 538, Fla. Stat., is silent regarding disposition of the proceeds from the sale of the motor vehicle other than to prohibit the imposition of any fee in excess of twenty-two percent per month, the provisions of s. 679.504 relating to disbursement of the excess proceeds would be applicable. In contrast, s. 679.504(1)(b), Fla. Stat., which permits a secured party to use proceeds from the sale to pay for the costs of retaking, holding, and preparing for the sale of the property, conflicts with the Legislature's clear statement in s.538.06(5)(f), Fla. Stat., that no fees other than the maximum twenty-two percent per month may be collected. Pursuant to s.671.304, Fla. Stat., the provisions of s. 538.06 would prevail.
[9] Compare, Ch. 539, Fla. Stat., the Florida Pawnbroking Act, which permits pawnbrokers to retain a similar indirect fee upon default. While the act allows interest and service fees of 25 percent per month, and states that this is the "total amount" that can be collected, it also provides that upon default "absolute right, title, and interest in and to the goods shall vest in and shall be deemed conveyed to the pawnbroker by operation of law," unlike Part I, Ch. 538, Fla. Stat., which only authorizes the secondhand dealer to repossess the vehicle. See, ss. 539.001(10) and (11), Fla. Stat.
[10] The four elements of a usurious transaction are: (1) an express or implied loan; (2) an understanding between the parties that the money loaned shall be returned; (3) an agreement that a greater rate of interest than is allowed by law shall be paid or agreed to be paid; and (4) the existence of a corrupt intent to take more than the legal rate for the use of the money loaned.See, Rollins v. Odom, supra, and Dixon v. Sharp, supra.
[11] See, s. 812.014, Fla. Stat.
[12] See, s. 895.03, Fla. Stat., which prohibits engaging in a pattern of racketeering activities as defined in s. 895.02, Fla. Stat. And see, s. 895.04, Fla. Stat., imposing criminal penalties for violations of s. 895.03. Persons who commit multiple violations of usury under s. 687.071, Fla. Stat., or theft under s. 812.014, Fla. Stat., are subject to treble damages in a civil racketeering action brought under s. 895.05, Fla. Stat.