The Honorable Robert F. Milligan Comptroller of Florida The Capitol Tallahassee, Florida 32399-0350
Dear Comptroller Milligan:
You ask substantially the following question:
Are so-called "payday loans" or like transactions subject to the state laws prohibiting usurious rates of interest?
In sum:
"Payday loans" or like transactions are subject to the state laws prohibiting usurious rates of interest. A company registered under Chapter 560, Florida Statutes, may cash personal checks for the fees prescribed in that chapter without violating the usury laws only if such transactions are concluded and are not extended, renewed or continued in any manner with the imposition of additional fees.
According to your letter, a payday lender provides cash to the consumer who, in return, provides a personal check that is held by the lender for a certain time period, generally until the consumer's next payday. The check covers the amount of cash provided as well as a fee charged for advancing the cash. This office is aware that the Attorneys General of Indiana and Maryland have recently addressed this issue and concluded that payday lenders or deferred deposit lenders are subject to state laws regulating loans and setting the maximum interest thereon.[1]
Section 687.02(1), Florida Statutes, provides that contracts for the payment of interest exceeding 18 percent per annum are usurious.[2] Interest exceeding 25 percent per annum is criminal usury.[3] Section 687.03(1), Florida Statutes, states that an unlawful rate of interest exists if a person reserves, charges or takes, directly or indirectly, a rate of interest exceeding that amount for any loan, advance of money, line of credit orforbearance to enforce the collection of any sum of money or otherobligation. This provision affects any rate of interest charged:
"[B]y way of commission for advances, discounts, or exchange, or by any contract, contrivance, or device whatever whereby the debtor is required or obligated to pay a sum of money greater than the actual principal sum received, together with interest at the rate of the equivalent of 18 percent per annum simple interest."
Since the purpose of usury laws is to protect needy borrowers by penalizing unconscionable money lenders, courts will look beyond the form of a transaction to its substance when considering usury calculations.[4] Thus, the mere form of a transaction becomes immaterial, and a court will consider whether the transaction in effect exacts an interest rate higher than that allowed by law.[5]
In Medina v. Lamonica,[6] the jury found that Medina had charged Lamonica a usurious rate of interest when Medina loaned Lamonica 500,000 Venezuelan bolivares and Lamonica gave Medina a postdated check in the amount of $122,000 from which the loan was to be repaid. The postdated check exceeded the principal amount of the loan in an amount sufficient to allow the jury to determine that the rate of interest was between 18 percent and 25 percent, and thus usurious. More recently in FastFunding The Company, Inc. v.Betts,[7] the court held that it should first determine whether a payday loan violated the state's usury laws before sending the case to arbitration: "If Ms. Betts is correct in her complaint that the contract violates the usury laws, then the contract is illegal and an arbitrator could not require Ms. Betts to perform under the contract."
An agreement, whether express or implied, whereby a person, rather than merely cashing a check for a fee, agrees to hold the check for a certain time period for the advance of money, would appear to constitute forbearance to enforce the collection of the money. Thus, such agreements would constitute a loan subject to the usury statutes.
Companies providing payday loan services are generally registered under Part II or Part III of Chapter 560, Florida Statutes, the Money Transmitters Code. Part II of Chapter 560, Florida Statutes, addresses payment instruments and funds transmission while Part III provides for check cashing and foreign currency exchange. Those registered under Part II are authorized to engage in the activities authorized under Part III.[8] While a Part II registrant may engage in check cashing services of the nature authorized in Part III, such activities must be consistent with the provisions of that part.
Part II of Chapter 560, Florida Statutes, the "Payment Instruments and Funds Transmission Act," authorizes registered persons to sell payment instruments and to transmit funds to another location. An examination of the legislative history surrounding the adoption of Part II, Chapter 560, clearly indicates that Part II was intended to address the registration and regulation of persons who sell money orders, traveler's checks, drafts, warrants, and checks, and persons who transmit funds to another location via wire, facsimile, electronic transfer, or courier.[9] Nothing in Part II contemplates that the act will be used to accomplish a loan. While a registered person may sell payment instruments, to the extent the transaction includes an agreement to delay the enforcement of collecting any sum of money or obligation, such a transaction would be a loan subject to the usury provisions of Chapter 687, Florida Statutes.
Part III, Chapter 560, Florida Statutes, constitutes the "Check Cashing and Foreign Currency Exchange Act" (act). Section560.309(4), Florida Statutes, provides that, exclusive of the direct costs of verification that shall be established by Department of Banking and Finance rule, no check casher shall:
"(a) Charge fees, except as otherwise provided by this part, in excess of 5 percent of the face amount of the payment instrument, or 6 percent without the provision of identification, or $5, whichever is greater;
(b) Charge fees in excess of 3 percent of the face amount of the payment instrument, or 4 percent without the provision of identification, or $5, whichever is greater, if such payment instrument is the payment of any kind of state public assistance or federal social security benefit payable to the bearer of such payment instrument; or
(c) Charge fees for personal checks or money orders in excess of 10 percent of the face amount of those payment instruments, or $5, whichever is greater."
Rule 3C-560.801(1), Florida Administrative Code, provides that in addition to the fees established in section 560.309(4), Florida Statutes, a check casher may collect the direct costs associated with verifying a payment instrument holder's identity, residence, employment, credit history, account status, or other necessary information prior to cashing the payment instrument, provided that the verification fee may only be collected when verification is required and shall not exceed $5 per transaction. A check casher may not charge a customer more than one verification fee per diem, regardless of whether the check casher is cashing or has cashed more than one of the customer's payment instruments that day.
The Department of Banking and Finance has also adopted Rule 3C-560.803, Florida Administrative Code, which states that a check casher may accept a postdated check, subject to the fees established in section 560.309(4), Florida Statutes.
Accordingly, Chapter 560, Florida Statutes, as implemented by rule of the Department of Banking and Finance, authorizes the acceptance of a postdated check to be cashed at the end of a specified period of time. Further, the act directs what fees may be imposed. For a personal check, the fee may not exceed 10 percent of the face value of the check and the verification fee may not exceed $5. The fees authorized by Part III of Chapter 560, Florida Statutes, and by the administrative rules would apply regardless of whether the personal check received in the transaction is deposited immediately or deposit is deferred until a later date. Nothing in Chapter 560, Florida Statutes, however, recognizes that such arrangements may be deferred from presentment in order to be extended, renewed, or continued in any manner with the imposition of additional fees.[10] Moreover, an examination of the legislative history surrounding the amendment of Chapter 560 in 1994, when Parts II and III were adopted, fails to reveal any evidence that the Legislature contemplated that such transactions could "roll over."[11]
Thus, to the extent that a transaction comports with the provisions of this act, it would not violate the usury provisions in Chapter 687, Florida Statutes. In the absence of statutory authorization for these types of transactions, cashing a check or exchanging currency for a fee outside the scope of Chapter 560, Florida Statutes, would constitute a loan, subject to the usury provisions of Chapter 687, Florida Statutes.
Accordingly, I am of the opinion that a "payday loan" or like transaction whereby a company provides cash to the consumer who, in return, provides a personal check that is held by the company for a certain time period and covers the amount of cash provided as well as a fee charged for advancing the cash, constitutes a loan subject to the usury laws. A company registered under Chapter 560, Florida Statutes, however, may cash personal checks for the fees prescribed in that chapter without violating the usury laws if such transactions are concluded without being extended, renewed, or in any way continued with the imposition of additional fees.
RAB/tst
[1] See, Opinion of the Attorney General of Maryland to Thomas L. Bronwell, dated November 24, 1999, and Opinion of the Indiana Attorney General to Charles W. Philips, dated January 19, 2000.
[2] And see, s. 516.02(2)(a), Fla. Stat., of the Florida Consumer Finance Act, stating:
"A person who is engaged in the business of making loans of money, except as authorized by this chapter or other statutes of this state, may not directly or indirectly charge, contract for, or receive any interest or consideration greater than 18 percent per annum upon the loan, use, or forbearance of money, goods, or chooses in action, or upon the loan or use of credit, of the amount or value of $25,000 or less."
[3] See, s. 687.071(2) and (3), Fla. Stat.
[4] Rollins v. Odom, 519 So.2d 652 (Fla. 1st DCA 1988). Andsee, Dixon v. Sharp, 276 So.2d 817, 820 (Fla. 1973) (purpose of usury law is "to bind the power of creditors over necessitous debtors and prevent them from extorting harsh and undue terms in the making of loans").
[5] See, Beacham v. Carr, 166 So. 456 (Fla. 1936) (a court will not permit the use of a form designed to evade the evident purpose of the usury laws). And see, Mindlin v. Davis, 74 So.2d 789 (Fla. 1954); Rebman v. Flagship First National Bank of Highlands County,472 So.2d 1360 (Fla. 2d DCA 1985); Jersey Palm-Gross v. Paper,639 So.2d 664 (Fla. 4th DCA 1994), approved, 658 So.2d 531 (Fla. 1995); Gilbert v. Doris R. Corporation, 111 So.2d 682, 684 (Fla. 3d DCA 1959); Party Yards, Inc. v. Templeton, 751 So.2d 121 (Fla. 5th DCA 2000); Bermil Corporation v. Sawyer, 353 So.2d 579 (Fla. 3d DCA 1977).
[6] 492 So.2d 809 (Fla. 3d DCA 1986).
[7] Case No. 5D99-2639 (Fla. 5th DCA, filed March 31, 2000). Judge Dauksch, in his concurring opinion, suggested that the Attorney General "may be interested" in this matter.
[8] Section 560.204(2), Fla. Stat.
[9] See, e.g., Florida House of Representatives Committee on Commerce Final Bill Analysis Economic Impact Statement on HB 2653 (as passed by the Legislature as Ch. 94-354, Laws of Florida), dated April 22, 1994.
[10] See generally, Alsop v. Pierce, 19 So.2d 799, 805-806
(Fla. 1944) (a legislative directive as to how a thing should be done is, in effect, a prohibition against its being done in any other way; where the Legislature has prescribed the mode, that mode must be observed).
[11] See, n. 9, supra.